**ARGONAUT MINING CO., Limited, v. McPIKE.**

**No. 7697.**

Circuit Court of Appeals, Ninth Circuit.
July 9, 1935.

Chickering & Gregory, Evan Williams, and M. L. Crimmins, Jr., all of San Francisco, Cal., for appellant.

Robert L. McWilliams, Asst. U. S. Atty., of San Francisco, Cal., for appellee.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

This appeal is from a decree dismissing, on appellee's motion, a bill of complaint filed by appellant, a corporation engaged in the mining and production of gold in the Northern District of California, to enjoin appellee, the United States Attorney for said District, from prosecuting appellant criminally for violating an order issued by the President on August 28, 1933 (No. 6260, 12 USCA § 95 note), under section 5 (b) of the Act of October 6, 1917, as amended by section 2 of the Act of March 9, 1933, c. 1, 48 Stat. 1, 12 USCA § 95a, or for violating an order issued by the Acting Secretary of the Treasury on December 28, 1933, under section 11 (n) of the Federal Reserve Act, as amended by section 3 of the Act of March 9, 1933, 48 Stat. 2, 12 USCA 248 (n). Sections 5 (b) and 11 (n), as amended, read as follows:

"(b) During time of war or during any other period of national emergency declared by the President, the President may, through any agency that he may designate, or otherwise, investigate, regulate, or prohibit, under such rules and regulations as he may prescribe, by means of licenses or otherwise, any transactions in foreign exchange, transfers of credit between or payments by banking institutions as defined by the President, and export, hoarding, melting, or earmarking of gold or silver coin or bullion or currency, by any person with-

in the United States or any place subject to the jurisdiction thereof; and the President may require any person engaged in any transaction referred to in this subdivision [section] to furnish under oath, complete information relative thereto, including the production of any books of account, contracts, letters or other papers, in connection therewith in the custody or control of such person, either before or after such transaction is completed. Whoever willfully violates any of the provisions of this subdivision [section] or of any license, order, rule or regulation issued thereunder, shall, upon conviction, be fined not more than $10,000, or, if a natural person, may be imprisoned for not more than ten years, or both; and any officer, director, or agent of any corporation who knowingly participates in such violation may be punished by a like fine, imprisonment, or both. As used in this subdivision [section] the term 'person' means an individual, partnership, association, or corporation."

"(n) Whenever in the judgment of the Secretary of the Treasury such action is necessary to protect the currency system of the United States, the Secretary of the Treasury, in his discretion, may require any or all individuals, partnerships, associations and corporations to pay and deliver to the Treasurer of the United States any or all gold coin, gold bullion, and gold certificates owned by such individuals, partnerships, associations and corporations. Upon receipt of such gold coin, gold bullion or gold certificates, the Secretary of the Treasury shall pay therefor an equivalent amount of any other form of coin or currency coined or issued under the laws of the United States. The Secretary of the Treasury shall pay all costs of the transportation of such gold bullion, gold certificates, coin, or currency, including the cost of insurance, protection, and such other incidental costs as may be reasonably necessary. Any individual, partnership, association, or corporation failing to comply with any requirement of the Secretary of the Treasury made under this subsection shall be subject to a penalty equal to twice the value of the gold or gold certificates in respect of which such failure occurred, and such penalty may be collected by the Secretary of the Treasury by suit or otherwise."

The President's order of August 28, 1933, declared a national emergency and provided that, within fifteen days from that date every person in possession of or owning gold coin, gold bullion, or gold certificates, with exceptions not pertinent here, should make, under oath, and file with the Collector of Internal Revenue a return to the Secretary of the Treasury containing true and complete information relative thereto; that such return should be deemed an application for the issuance of a license to hold such coin, bullion, and certificates; and that, after thirty days from the date of the order, no person should hold in his possession or retain any interest, legal or equitable, in any gold coin, gold bullion, or gold certificates, except under license therefor.

The Acting Secretary's order of December 28, 1933, required every person subject to the jurisdiction of the United States, with exceptions not pertinent here, forthwith to pay and deliver to the Treasurer of the United States all gold coin, gold bullion, and gold certificates situated in the United States, such delivery to be made by placing such gold coin, bullion, or certificates in the custody of a Federal Reserve Bank, or member bank of the Federal Reserve System, and forwarding confirmation thereof to the Treasurer, and provided that, upon receipt of such confirmation, the Secretary would pay for such gold coin, bullion, or certificates an equivalent amount of any form of coin or currency coined or issued under the laws of the United States.

The bill alleges that appellant owns and has in its possession 7,171.65 ounces of gold bullion, which it mined and produced prior to August 28, 1933, and that, pursuant to the President's order of August 28, 1933, appellant, on September 18, 1933, made, under oath, and filed with the Collector of Internal Revenue a return to the Secretary of the Treasury containing true and complete information relative to appellant's said gold bullion, but that the Secretary has refused to grant appellant a license to hold or dispose of said bullion. It does not appear from the bill that appellant has willfully violated, or that it desires or intends to violate, the President's order. On the contrary, it appears that appellant has endeavored to comply and, so far as possible, has complied with the order, and that consequently, there is no basis for any prosecution of appellant under section 5 (b) of the Act of October 6, 1917, as amended by section 2 of the Act of March 9, 1933 (12 USCA § 95a).

The bill further alleges that, pursuant to the Acting Secretary's order of December 28, 1933, appellant, on January 10,

1934, tendered its said bullion to the Treasurer of the United States; that the Secretary of the Treasury refused to pay appellant the then prevailing market price of $34.06 per ounce for said bullion, but offered appellant the arbitrary price of $20.67 per ounce therefor, in currency of the United States; and that appellant thereupon withdrew its tender and retained said bullion in its possession, but that appellant has always been and is now ready and willing to deliver said bullion "to the duly authorized agent of the United States in return for just compensation to which it is entitled under the Constitution of the United States."

The bill further alleges that section 5 (b) of the Act of October 6, 1917, as amended by section 2 of the Act of March 9, 1933, section 11 (n) of the Federal Reserve Act, as amended by section 3 of the Act of March 9, 1933, the President's order of August 28, 1933, and the Acting Secretary's order of December 28, 1933, are unconstitutional and void, but that, notwithstanding their invalidity, appellee threatens to prosecute appellant thereunder unless it delivers its said bullion at the wholly arbitrary price of $20.67 per ounce, and to recover of appellant a penalty of double the value of said bullion, and that, unless restrained therefrom appellee intends to and will enforce against appellant, "the various pains, penalties, seizures and forfeitures provided for in said Act of Congress of March 9, 1933," and the orders issued thereunder, and will commence and prosecute "the various prosecutions, proceedings and suits purported to be authorized or required." The various pains, penalties, seizures, forfeitures, prosecutions, proceedings, and suits referred to are not particularized. Apparently, the only action specifically threatened is a criminal prosecution to recover a penalty of twice the value of the gold withheld by appellant, as provided in section 11 (n) of the Federal Reserve Act, as amended by section 3 of the Act of March 9, 1933, 12 USCA § 248 (n).

Appellee moved to dismiss the bill upon the ground that it failed to state a cause of action. The District Court granted appellee's motion and dismissed the bill. The sufficiency or insufficiency of the bill is, therefore, the first and principal question raised on this appeal.

The sole object of the bill is to enjoin appellee from enforcing a criminal statute. No other relief is prayed for. Appellant concedes that, as a general rule, equity will not enjoin the enforcement of a criminal statute, even though it be unconstitutional. Spielman Motor Sales Co. v. Dodge, 295 U. S. 89, 55 S. Ct. 678, 680, 79 L. Ed. ——, decided April 29, 1935; Fenner v. Boykin, 271 U. S. 240, 243, 46 S. Ct. 492, 70 L. Ed. 927; Cavanaugh v. Looney, 248 U. S. 453, 456, 39 S. Ct. 142, 63 L. Ed. 354; Davis & Farnum Mfg. Co. v. Los Angeles, 189 U. S. 207, 217, 23 S. Ct. 498, 47 L. Ed. 778; Fitts v. McGhee, 172 U. S. 516, 531, 19 S. Ct. 269, 43 L. Ed. 535; In re Sawyer, 124 U. S. 200, 210, 8 S. Ct. 482, 31 L. Ed. 402. But appellant seeks to bring itself within an exception to the rule, namely, that a criminal prosecution under an unconstitutional statute will be enjoined when that is essential to the safeguarding of property rights. Cline v. Frink Dairy Co., 274 U. S. 445, 452, 47 S. Ct. 681, 71 L. Ed. 1146; Tyson & Bro. Offices v. Banton, 273 U. S. 418, 428, 47 S. Ct. 426, 71 L. Ed. 718, 58 A. L. R. 1236; Hygrade Provision Co. v. Sherman, 266 U. S. 497, 500, 45 S. Ct. 141, 69 L. Ed. 402; Packard v. Banton, 264 U. S. 140, 143, 44 S. Ct. 257, 68 L. Ed. 596; Terrace v. Thompson, 263 U. S. 197, 214, 44 S. Ct. 15, 68 L. Ed. 255; Truax v. Raich, 239 U. S. 33, 37, 36 S. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283; Philadelphia Co. v. Stimson, 223 U. S. 605, 621, 32 S. Ct. 340, 56 L. Ed. 570; Ex parte Young, 209 U. S. 123, 161, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764.

The allegations of appellant's bill do not bring it within this exception. The exception exists only where the circumstances are exceptional, the danger of irreparable loss great and immediate, and the necessity for equitable interference clearly shown. Spielman Motor Sales Co. v. Dodge, supra; Cline v. Frink Dairy Co., supra; Fenner v. Boykin, supra; Cavanaugh v. Looney, supra. The bill in this case makes no such showing. The only property involved is one certain lot of gold bullion owned and held by appellant. The only right asserted is appellant's right to receive for this bullion its equivalent in money, which equivalent appellant says is $34.06 per ounce, instead of $20.67 per ounce, as offered by the Secretary of the Treasury. Appellant does not question the Secretary's right to require delivery of the bullion, provided just compensation is paid therefor. The actual controversy between appellant and the Secretary relates solely to the amount of such compensation.

No exceptional circumstances necessitating equitable interference are set forth in the bill. It is apparent from the bill that only one prosecution is threatened. As to other bullion owned or produced by appellant, there appears to be no controversy. There is no sufficient showing that appellant's business will be interfered with or injured by the threatened prosecution. There are general allegations to the effect that such prosecution will involve appellant in a multiplicity of legal proceedings and will involve the destruction of its business and property, thereby causing it irreparable damage, but these are mere conclusions, unsupported by allegations of fact, and we are not bound thereby. Spielman Motor Sales Co. v. Dodge, supra; Davis & Farnum Mfg. Co. v. Los Angeles, supra. The bill fails utterly to show that the threatened prosecution will result in immediate and irreparable loss to appellant.

In the recent case of Spielman Motor Sales Co. v. Dodge, supra, the District Court was asked to enjoin the enforcement of a state statute which made any violation of the Motor Vehicle Retailing Code a misdemeanor, punishable by a fine of $500 for each offense. The District Court dismissed the bill on the ground that the statute was valid. The Supreme Court held that it should have been dismissed for failure to state a case within the equitable jurisdiction of the District Court. Speaking through Chief Justice Hughes, the Supreme Court said:

"The general rule is that equity will not interfere to prevent the enforcement of a criminal statute even though unconstitutional. * * * To justify such interference there must be exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights. * * * We have said that it must appear that 'the danger of irreparable loss is both great and immediate'; otherwise, the accused should first set up his defense in the state court, even though the validity of a statute is challenged. There is ample opportunity for ultimate review by this Court of federal questions. * * *

"Appellant's bill of complaint failed to meet this test. * * * The bill contained general allegations of irreparable damage and deprivation of 'rights, liberties, properties, and immunities' without due process of law, if the statute were enforced. But the bill failed to state facts sufficient to warrant such conclusions, which alone were not enough. The bill alleged that appellant had a large business in buying and selling motor vehicles, but the statute did not prohibit the continuance of that business and the bill gave no facts to show that the particular requirements of the code, which were in question, would create such a serious interference as to require equitable relief. Aside from the statement of general and unsupported conclusions, the case presented by the bill was the ordinary one of a criminal prosecution which would afford appropriate opportunity for the assertion of appellant's rights. So far as the bill disclosed, nothing more than a single prosecution was in contemplation, a point which the district attorney emphasized by his disclaimer, on the hearing below, of any intention to institute any further prosecution against appellant until his rights, constitutional or otherwise, had been adjudicated in the pending criminal proceeding."

The test which the Supreme Court applied in the Spielman Case is applicable here. Applying it, we hold that appellant's bill of complaint did not state a case within the equitable jurisdiction of the District Court and, for that reason, was properly dismissed.

Decree affirmed.