**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>STEVE MCINTOSH,<br>*Defendant-Appellant.* | No. 15-10117<br><br>D.C. No.<br>3:14-cr-00016-<br>MMC-3 |

Appeal from the United States District Court
for the Northern District of California
Maxine M. Chesney, Senior District Judge, Presiding

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>IANE LOVAN,<br>*Defendant-Appellant.* | No. 15-10122<br><br>D.C. No.<br>1:13-cr-00294-<br>LJO-SKO-1 |

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

SOMPHANE MALATHONG,
*Defendant-Appellant*.

No. 15-10127

D.C. No.
1:13-cr-00294-
LJO-SKO-3

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

VONG SOUTHY,
*Defendant-Appellant*.

No. 15-10132

D.C. No.
1:13-cr-00294-
LJO-SKO-2

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

KHAMPHOU KHOUTHONG,
*Defendant-Appellant*.

No. 15-10137

D.C. No.
1:13-cr-00294-
LJO-SKO-4

Appeals from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee*,

        v.

JERAD JOHN KYNASTON, AKA Jared
J. Kynaston, AKA Jerad J.
Kynaston; SAMUEL MICHAEL
DOYLE, AKA Samuel M. Doyle;
BRICE CHRISTIAN DAVIS, AKA Brice
C. Davis; JAYDE DILLON EVANS,
AKA Jayde D. Evans; TYLER SCOTT
MCKINLEY, AKA Tyler S.
McKinley,
        *Defendants-Appellants*.

No. 15-30098

D.C. No.
2:12-cr-00016-
WFN-1

Appeal from the United States District Court
for the Eastern District of Washington
Wm. Fremming Nielsen, Senior District Judge, Presiding

| | |
|---|---|
| IN RE IANE LOVAN, | No. 15-71158 |
| | |
| IANE LOVAN, *Petitioner*, | D.C. No. 1:13-cr-00294-LJO-SKO-1 |
| v. | |
| UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, FRESNO, *Respondent*, | |
| UNITED STATES OF AMERICA, *Real Party in Interest*. | |

| | |
|---|---|
| IN RE SOMPHANE MALATHONG, | No. 15-71174 |
| | |
| SOMPHANE MALATHONG, *Petitioner*, | D.C. No. 1:13-cr-00294-LJO-SKO-3 |
| v. | |
| UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, FRESNO, *Respondent*, | |
| UNITED STATES OF AMERICA, *Real Party in Interest*. | |

IN RE VONG SOUTHY,

VONG SOUTHY,
                            *Petitioner*,

v.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
CALIFORNIA, FRESNO,
                            *Respondent*,

UNITED STATES OF AMERICA,
            *Real Party in Interest*.

No. 15-71179

D.C. No.
1:13-cr-00294-
LJO-SKO-2

---

IN RE KHAMPHOU KHOUTHONG,

KHAMPHOU KHOUTHONG,
                            *Petitioner*,

v.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
CALIFORNIA, FRESNO,
                            *Respondent*,

UNITED STATES OF AMERICA,
            *Real Party in Interest*.

No. 15-71225

D.C. No.
1:13-cr-00294-
LJO-SKO-4

OPINION

Petitions for Writ of Mandamus

Argued and Submitted December 7, 2015
San Francisco, California

Filed August 16, 2016

Before: Diarmuid F. O'Scannlain, Barry G. Silverman,
and Carlos T. Bea, Circuit Judges.

Opinion by Judge O'Scannlain

## SUMMARY[*]

### Criminal Law

In ten consolidated interlocutory appeals and petitions for writs of mandamus arising from three district courts in two states, the panel vacated the district court's orders denying relief to the appellants, who have been indicted for violating the Controlled Substances Act, and who sought dismissal of their indictments or to enjoin their prosecutions on the basis of a congressional appropriations rider, Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, § 542, 129 Stat. 2242, 2332-33 (2015), that prohibits the Department of Justice from spending funds to prevent states' implementation of their medical marijuana laws.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that it has jurisdiction under 28 U.S.C. § 1292(a)(1) to consider the interlocutory appeals from these direct denials of requests for injunctions, and that the appellants have standing to invoke separation-of-powers provisions of the Constitution to challenge their criminal prosecutions.

The panel held that § 542 prohibits DOJ from spending funds from relevant appropriations acts for the prosecution of individuals who engaged in conduct permitted by state medical marijuana laws and who fully complied with such laws. The panel wrote that individuals who do not strictly comply with all state-law conditions regarding the use, distribution, possession, and cultivation of medical marijuana have engaged in conduct that is unauthorized, and that prosecuting such individuals does not violate § 542.

Remanding to the district courts, the panel instructed that if DOJ wishes to continue these prosecutions, the appellants are entitled to evidentiary hearings to determine whether their conduct was completely authorized by state law. The panel wrote that in determining the appropriate remedy for any violation of § 542, the district courts should consider the temporal nature of the lack of funds along with the appellants' rights to a speedy trial.

**COUNSEL**

Marc J. Zilversmit (argued), San Francisco, California, for Defendant-Appellant Steve McIntosh.

Robert R. Fischer (argued), Federal Defenders of Eastern Washington & Idaho, Spokane, Washington, for Defendant-Appellant Jerad John Kynaston.

Richard D. Wall, Spokane, Washington, for Defendant-Appellant Tyler Scott McKinley.

Douglas Hiatt, Seattle, Washington; Douglas Dwight Phelps, Spokane, Washington; for Defendant-Appellant Samuel Michael Doyle.

David Matthew Miller, Spokane, Washington, for Defendant-Appellant Brice Christian Davis.

Nicholas V. Vieth, Spokane, Washington, for Defendant-Appellant Jayde Dillion Evans.

Andras Farkas (argued), Assistant Federal Defender; Heather E. Williams, Federal Defender; Federal Defenders of the Eastern District of California, Fresno, California; for Defendant-Appellant/Petitioner Iane Lovan.

Daniel L. Harralson, Daniel L. Harralson Law Corp., Fresno, California, for Defendant-Appellant/Petitioner Somphane Malathong.

Harry M. Drandell, Law Offices of Harry M. Drandell, Fresno, California, for Defendant-Appellant/Petitioner Vong Southy.

Peter M. Jones, Wanger Jones Helsley, P.C., Fresno, California, for Defendant-Appellant/Petitioner Khamphou Khouthong.

Owen P. Martikan (argued), Assistant United States Attorney; Barbara J. Valliere, Chief, Appellate Division; Brian Stretch, United States Attorney; United States Attorney's Office, San Francisco, California, and ; Russell E. Smoot and Timothy J. Ohms, Assistant United States Attorneys; Michael C. Ormsby, United States Attorney; United States Attorney's Office, Spokane, Washington; Camil A. Skipper, Assistant United States Attorney; Benjamin B. Wagner, United States Attorney; United States Attorney's Office, Sacramento, California; for Plaintiff-Appellee/Real Party in Interest United States.

## OPINION

O'SCANNLAIN, Circuit Judge:

We are asked to decide whether criminal defendants may avoid prosecution for various federal marijuana offenses on the basis of a congressional appropriations rider that prohibits the United States Department of Justice from spending funds to prevent states' implementation of their own medical marijuana laws.

I

A

These ten cases are consolidated interlocutory appeals and petitions for writs of mandamus arising out of orders entered

by three district courts in two states within our circuit.[1]  All Appellants have been indicted for various infractions of the Controlled Substances Act (CSA).  They have moved to dismiss their indictments or to enjoin their prosecutions on the grounds that the Department of Justice (DOJ) is prohibited from spending funds to prosecute them.

In *McIntosh*, five codefendants allegedly ran four marijuana stores in the Los Angeles area known as Hollywood Compassionate Care (HCC) and Happy Days, and nine indoor marijuana grow sites in the San Francisco and Los Angeles areas.  These codefendants were indicted for conspiracy to manufacture, to possess with intent to distribute, and to distribute more than 1000 marijuana plants in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(l)(A).  The government sought forfeiture derived from such violations under 21 U.S.C. § 853.

In *Lovan*, the U.S. Drug Enforcement Agency and Fresno County Sheriff's Office executed a federal search warrant on 60 acres of land located on North Zedicker Road in Sanger, California.  Officials allegedly located more than 30,000 marijuana plants on this property.  Four codefendants were indicted for manufacturing 1000 or more marijuana plants and for conspiracy to manufacture 1000 or more marijuana plants in violation of 21 U.S.C. §§ 841(a)(1), 846.

---

[1] Appellants filed one appeal in *United States v. McIntosh*, No. 15-10117, arising out of the Northern District of California; one appeal in *United States v. Kynaston*, No. 15-30098, arising out of the Eastern District of Washington; and four appeals with four corresponding petitions for mandamus—Nos. 15-10122, 15-10127, 15-10132, 15-10137, 15-71158, 15-71174, 15-71179, 15-71225, which we shall address as *United States v. Lovan*—arising out of the Eastern District of California.

In *Kynaston*, five codefendants face charges that arose out of the execution of a Washington State search warrant related to an investigation into violations of Washington's Controlled Substances Act. Allegedly, a total of 562 "growing marijuana plants," along with another 677 pots, some of which appeared to have the root structures of suspected harvested marijuana plants, were found. The codefendants were indicted for conspiring to manufacture 1000 or more marijuana plants, manufacturing 1000 or more marijuana plants, possessing with intent to distribute 100 or more marijuana plants, possessing a firearm in furtherance of a Title 21 offense, maintaining a drug-involved premise, and being felons in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(c)(1)(A)(i) and 21 U.S.C. §§ 841, 856(a)(1).

B

In December 2014, Congress enacted the following rider in an omnibus appropriations bill funding the government through September 30, 2015:

> None of the funds made available in this Act to the Department of Justice may be used, with respect to the States of Alabama, Alaska, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, Oregon, Rhode Island, South Carolina, Tennessee, Utah, Vermont, Washington, and Wisconsin, to prevent such

> States from implementing their own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana.

Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235, § 538, 128 Stat. 2130, 2217 (2014). Various short-term measures extended the appropriations and the rider through December 22, 2015. On December 18, 2015, Congress enacted a new appropriations act, which appropriates funds through the fiscal year ending September 30, 2016, and includes essentially the same rider in § 542. Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, § 542, 129 Stat. 2242, 2332–33 (2015) (adding Guam and Puerto Rico and changing "prevent such States from implementing their own State laws" to "prevent any of them from implementing their own laws").

Appellants in *McIntosh*, *Lovan*, and *Kynaston* filed motions to dismiss or to enjoin on the basis of the rider. The motions were denied from the bench in hearings in *McIntosh* and *Lovan*, while the court in *Kynaston* filed a short written order denying the motion after a hearing. In *McIntosh* and *Kynaston*, the court concluded that defendants had failed to carry their burden to demonstrate their compliance with state medical marijuana laws. In *Lovan*, the court concluded that the determination of compliance with state law would depend on facts found by the jury in a federal prosecution, and thus it would revisit the defendants' motion after the trial.

Appellants in all three cases filed interlocutory appeals, and Appellants in *McIntosh* and *Lovan* ask us to consider issuing writs of mandamus if we do not assume jurisdiction over the appeals.

II

Federal courts are courts of limited subject-matter jurisdiction, possessing only that power authorized both by the Constitution and by Congress. *See Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013). Before proceeding to the merits of this dispute, we must assure ourselves that we have jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998).

A

The parties dispute whether Congress has authorized us to exercise jurisdiction over these interlocutory appeals. "Our jurisdiction is typically limited to final decisions of the district court." *United States v. Romero-Ochoa*, 554 F.3d 833, 835 (9th Cir. 2009). "In criminal cases, this prohibits appellate review until after conviction and imposition of sentence." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989). In the cases before us, no Appellants have been convicted or sentenced. Therefore, unless some exception to the general rule applies, we should not reach the merits of this dispute. Appellants invoke three possible avenues for reaching the merits: jurisdiction over an order refusing an injunction, jurisdiction under the collateral order doctrine, and the writ of mandamus. We address the first of these three avenues.

1

Under 28 U.S.C. § 1292(a), "the courts of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts of the United States . . . granting, continuing, modifying, *refusing* or dissolving *injunctions*, . . .

except where a direct review may be had in the Supreme Court." (emphasis added). By its terms, § 1292(a)(1) requires only an interlocutory order refusing an injunction. Nonetheless, relying on *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981), the government argues that § 1292(a)(1) requires Appellants to show that the interlocutory order (1) has the effect of refusing an injunction; (2) has a serious, perhaps irreparable, consequence; and (3) can be effectually challenged only by immediate appeal.

The government's reliance on *Carson* is misplaced in light of our precedent interpreting that case. In *Shee Atika v. Sealaska Corp.*, we explained:

> In *Carson*, the Supreme Court considered whether section 1292(a)(1) permitted appeal from an order denying the parties' joint motion for approval of a consent decree that contained an injunction as one of its provisions. Because the order did not, on its face, deny an injunction, an appeal from the order did not fall precisely within the language of section 1292(a)(1). The Court nevertheless permitted the appeal. The Court stated that, while section 1292(a)(1) must be narrowly construed in order to avoid piecemeal litigation, it does permit appeals from orders that have the "practical effect" of denying an injunction, provided that the would-be appellant shows that the order "might have a serious, perhaps irreparable, consequence."

> We find nothing in *Carson* to suggest that the requirement of irreparable injury applies to appeals from orders specifically denying injunctions. *Carson* merely expanded the scope of appeals that do not fall within the meaning of the statute. Sealaska appeals from the direct denial of a request for an injunction. *Carson*, therefore, is simply irrelevant.

39 F.3d 247, 249 (9th Cir. 1994) (citations omitted); *accord Paige v. California*, 102 F.3d 1035, 1038 (9th Cir. 1996); *see also Shee Atika*, 39 F.3d at 249 n.2 (noting that its conclusion was consistent with "the overwhelming majority of courts of appeals that have considered the issue" and collecting cases). Thus, *Carson*'s requirements do not apply to appeals from the "direct denial of a request for an injunction." *Shee Atika*, 39 F.3d at 249.

2

In the cases before us, the district courts issued direct denials of requests for injunctions. Lovan, for instance, requested injunctive relief in the conclusion of his opening brief: "Therefore, the Court should dismiss all counts against Mr. Lovan based upon alleged violations of 21 U.S.C. § 841 and/or enjoin the Department of Justice from taking any further action against the defendants in this case unless and until the Department can show such action does not involve the expenditure of any funds in violation of the Appropriations Act." At the hearing, Lovan's counsel made exceptionally clear that his motion sought injunctive relief in the alternative:

> THE COURT: But remember, your remedy is not because you are upset that the Department of Justice is spending taxpayer money. Your remedy is a dismissal, which is what you are seeking now, is it not?

> MR. FARKAS: And your Honor, as an alternative in our motion, we ask for a stay of these proceedings, asked this Court to enjoin the Department of Justice from spending any funds to prosecute Mr. Lovan if this Court finds he is in conformity with the California Compassionate Use Act. So it is a motion to dismiss or, alternatively, a motion to enjoin until Congress designates funds for that purpose.

Shortly thereafter, Lovan's counsel reiterated: "[W]e would ask either for a dismissal or to enjoin the government from spending any funds that were not appropriated under the Appropriations Act." At the close of the hearing, Lovan's counsel even explicitly argued that the district court's denial of injunctive relief would be appealable immediately: "I believe this might be the type of collateral order that is appealable to the Ninth Circuit immediately. As I said, we are asking for an injunction." The district court denied Lovan's motion, which clearly requested injunctive relief.

Similarly, in *Kynaston*, the opening brief in support of the motion began and ended with explicit requests for injunctive relief. Subsequent filings by other defendants in that case referenced the injunctive relief sought, and one discussed at length how courts of equity should exercise their jurisdiction.

The district court denied the motion, which clearly sought injunctive relief.

In *McIntosh*, the defendant requested injunctive relief in his moving papers, and he mentioned his request for injunctive relief three times in his reply brief. At the hearing, the question of injunctive relief did not arise, and the district court said simply that it was denying the motion. Although McIntosh could have emphasized the equitable component of his request more, we conclude that he raised the issue sufficiently for the denial of his motion to constitute a direct denial of a request for an injunction.

Therefore, we have jurisdiction under 28 U.S.C. § 1292(a)(1) to consider the interlocutory appeals from these direct denials of requests for injunctions.

3

We note the unusual circumstances presented by these cases. In almost all federal criminal prosecutions, injunctive relief and interlocutory appeals will not be appropriate. Federal courts traditionally have refused, except in rare instances, to enjoin federal criminal prosecutions. *See Ackerman v. Int'l Longshoremen's Union*, 187 F.2d 860, 868 (9th Cir. 1951); *Argonaut Mining Co. v. McPike*, 78 F.2d 584, 586 (9th Cir. 1935); *Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 185 (3d Cir. 2006); *Deaver v. Seymour*, 822 F.2d 66, 69 (D.C. Cir. 1987). "An order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under § 1292(a)(1)." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279 (1988). Thus, in almost all circumstances, federal

criminal defendants cannot obtain injunctions of their ongoing prosecutions, and  orders by district courts relating solely to requests to stay ongoing federal prosecutions will not constitute appealable orders under § 1292(a)(1).

Here, however, Congress has enacted an appropriations rider that specifically restricts DOJ from spending money to pursue certain activities.  It is "emphatically . . . the exclusive province of the Congress not only to formulate legislative policies and mandate programs and projects, but also to establish their relative priority for the Nation.   Once Congress, exercising its delegated powers, has decided the order of priorities in a given area, it is for . . . the courts to enforce them when enforcement is sought."  *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978); *accord United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (2001).   A "court sitting in equity cannot 'ignore the judgment of Congress, deliberately expressed in legislation.'" *Oakland Cannabis*, 532 U.S. at 497 (quoting *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 551 (1937)).  Even if Appellants cannot obtain injunctions of their prosecutions themselves, they can seek—and have sought—to enjoin DOJ from *spending funds* from the relevant appropriations acts on such prosecutions.[2]  When Congress has enacted a legislative

---

[2] We need not decide in the first instance exactly how the district courts should resolve claims that DOJ is spending money to prosecute a defendant in violation of an appropriations rider.  We therefore take no view on the precise relief required and leave that issue to the district courts in the first instance.  We note that district courts in criminal cases have ancillary jurisdiction, which "is the power of a court to adjudicate and determine matters incidental to the exercise of its primary jurisdiction over a cause under review."  *United States v. Sumner*, 226 F.3d 1005, 1013–15 (9th Cir. 2000); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

restriction like § 542 that expressly prohibits DOJ from spending funds on certain actions, federal criminal defendants may seek to enjoin the expenditure of those funds, and we may exercise jurisdiction over a district court's direct denial of a request for such injunctive relief.

B

1

As part of our jurisdictional inquiry, we must consider whether Appellants have standing to complain that DOJ is spending money that has not been appropriated by Congress. "The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance." *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004). Although the government concedes that Appellants have standing, we have an "independent obligation to examine [our] own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines." *United States v. Hays*, 515 U.S. 737, 742 (1995) (internal quotation marks and alterations omitted).

Constitutional limits on our jurisdiction are established by Article III, which limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. It "demands that an 'actual controversy' persist throughout all stages of litigation. That means that standing 'must be met by persons seeking appellate review . . . .'" *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) (citations omitted). To have Article III standing, a litigant "must have suffered or be

375, 378–80 (1994); *Garcia v. Teitler*, 443 F.3d 202, 206–10 (2d Cir. 2006).

imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action . . . and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014).

In *Bond v. United States*, the Supreme Court addressed a situation similar to the cases before us. 564 U.S. 211 (2011). There, the Third Circuit had concluded that the criminal defendant lacked "standing to challenge a federal statute on grounds that the measure interferes with the powers reserved to States," and the Supreme Court reversed. *Id.* at 216, 226.

The Court explained that "[o]ne who seeks to initiate or continue proceedings in federal court must demonstrate, among other requirements, both standing to obtain the relief requested, and, in addition, an 'ongoing interest in the dispute' on the part of the opposing party that is sufficient to establish 'concrete adverseness.'" *Id.* at 217 (citations omitted). "When those conditions are met, Article III does not restrict the opposing party's ability to object to relief being sought at its expense." *Id.* "The requirement of Article III standing thus had no bearing upon [the defendant's] capacity to assert defenses in the District Court." *Id.*

Applying those principles to the defendant's standing to appeal, the Court concluded that it was "clear Article III's prerequisites are met. Bond's challenge to her conviction and sentence 'satisfies the case-or-controversy requirement, because the incarceration . . . constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction.'" *Id.* Here, Appellants have not yet been deprived of liberty via a conviction, but their indictments imminently threaten such a deprivation. *Cf. Susan B.*

*Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342–47 (2014) (threatened prosecution may give rise to standing). They clearly had Article III standing to pursue their challenges below because they were merely objecting to relief sought at their expense. And they have standing on appeal because their potential convictions constitute concrete, particularized, and imminent injuries, which are caused by their prosecutions and redressable by injunction or dismissal of such prosecutions. *See Bond*, 564 U.S. at 217.

After addressing Article III standing, the *Bond* Court concluded that, "[i]f the constitutional structure of our Government that protects individual liberty is compromised, individuals who suffer otherwise justiciable injury may object." *Id.* at 223. The Court explained that both federalism and separation-of-powers constraints in the Constitution serve to protect individual liberty, and a litigant in a proper case can invoke such constraints "[w]hen government acts in excess of its lawful powers." *Id.* at 220–24. The Court gave numerous examples of cases in which private parties, rather than government departments, were able to rely on separation-of-powers principles in otherwise jusiticiable cases or controversies. *See id.* at 223 (citing *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010); *Clinton v. City of New York*, 524 U.S. 417, 433–36 (1998); *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995); *Bowsher v. Synar*, 478 U.S. 714 (1986); *INS v. Chadha*, 462 U.S. 919 (1983); *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952); *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935)).

The Court reiterated this principle in *NLRB v. Noel Canning*, 134 S. Ct. 2550 (2014). There, the Court granted

relief to a private party challenging an order against it on the basis that certain members of the National Labor Relations Board had been appointed in excess of presidential authority under the Recess Appointments Clause, another separation-of-powers constraint. *Id.* at 2557. The Court "recognize[d], of course, that the separation of powers can serve to safeguard individual liberty and that it is the 'duty of the judicial department'—in a separation-of-powers case as in any other—'to say what the law is.'" *Id.* at 2559–60 (citing *Clinton*, 524 U.S. at 449–50 (Kennedy, J., concurring), and quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)); *see also id.* at 2592–94 (Scalia, J., concurring in the judgment) (discussing at great length how the separation of powers protects individual liberty).

Thus, Appellants have standing to invoke separation-of-powers provisions of the Constitution to challenge their criminal prosecutions.

2

Here, Appellants complain that DOJ is spending funds that have not been appropriated by Congress in violation of the Appropriations Clause of the Constitution. *See* U.S. Const. art. I, § 9, cl. 7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law . . . ."). This "straightforward and explicit command . . . means simply that no money can be paid out of the Treasury unless it has been appropriated by an act of Congress." *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990) (citation omitted). "Money may be paid out only through an appropriation made by law; in other words, the payment of money from the Treasury must be authorized by a statute." *Id.*

The Appropriations Clause plays a critical role in the Constitution's separation of powers among the three branches of government and the checks and balances between them. "Any exercise of a power granted by the Constitution to one of the other branches of Government is limited by a valid reservation of congressional control over funds in the Treasury." *Id.* at 425. The Clause has a "fundamental and comprehensive purpose . . . to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents." *Id.* at 427–28. Without it, Justice Story explained, "the executive would possess an unbounded power over the public purse of the nation; and might apply all its moneyed resources at his pleasure." *Id.* at 427 (quoting 2 Joseph Story, *Commentaries on the Constitution of the United States* § 1348 (3d ed. 1858)).

Thus, if DOJ were spending money in violation of § 542, it would be drawing funds from the Treasury without authorization by statute and thus violating the Appropriations Clause. That Clause constitutes a separation-of-powers limitation that Appellants can invoke to challenge their prosecutions.

### III

The parties dispute whether the government's spending money on their prosecutions violates § 542.

### A

We focus, as we must, on the statutory text. Section 542 provides that "[n]one of the funds made available in this Act

to the Department of Justice may be used, with respect to [Medical Marijuana States[3]] to prevent any of them from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, § 542, 129 Stat. 2242, 2332–33 (2015). Unfortunately, the rider is not a model of clarity.

1

"It is a 'fundamental canon of statutory construction' that, 'unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.'" *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 876 (2014) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). Thus, in order to decide whether the prosecutions of Appellants violate § 542, we must determine the plain meaning of "prevent any of [the Medical Marijuana States] from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." The pronoun "them" refers back to the Medical Marijuana States, and "their own

---

[3] To avoid repeating the names of all 43 jurisdictions listed, we refer to Alabama, Alaska, Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Iowa, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Utah, Vermont, Virginia, Washington, Wisconsin, Wyoming, the District of Columbia, Guam, and Puerto Rico as the "Medical Marijuana States" and their laws authorizing "the use, distribution, possession, or cultivation of medical marijuana" as the "State Medical Marijuana Laws." While recognizing that the list includes three non-states, we will refer to the listed jurisdictions as states and their laws as state laws without further qualification.

laws" refers to the state laws of the Medical Marijuana States. And "implement" means:

> To "carry out, accomplish; *esp.*: to give practical effect to and ensure of actual fulfillment by concrete measure." *Implement*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003);

> "To put into practical effect; carry out." *Implement*, *American Heritage Dictionary of the English Language* (5th ed. 2011); and

> "To complete, perform, carry into effect (a contract, agreement, etc.); to fulfil (an engagement or promise)." *Implement*, *Oxford English Dictionary*, www.oed.com.

*See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) (We "may follow the common practice of consulting dictionaries to determine" ordinary meaning.); *Sandifer*, 134 S. Ct. at 876. In sum, § 542 prohibits DOJ from spending money on actions that prevent the Medical Marijuana States' giving practical effect to their state laws that authorize the use, distribution, possession, or cultivation of medical marijuana.

2

DOJ argues that it does not prevent the Medical Marijuana States from giving practical effect to their medical marijuana laws by prosecuting private individuals, rather than taking legal action against the state. We are not persuaded.

Importantly, the "[s]tatutory language cannot be construed in a vacuum. It is [another] fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Sturgeon v. Frost*, 136 S. Ct. 1061, 1070 (2016) (internal quotation marks omitted). Here, we must read § 542 with a view to its place in the overall statutory scheme for marijuana regulation, namely the CSA and the State Medical Marijuana Laws. The CSA prohibits the use, distribution, possession, or cultivation of any marijuana. *See* 21 U.S.C. §§ 841(a), 844(a).[4] The State Medical Marijuana Laws are those state laws that authorize the use, distribution, possession, or cultivation of medical marijuana. Thus, the CSA prohibits what the State Medical Marijuana Laws permit.

In light of the ordinary meaning of the terms of § 542 and the relationship between the relevant federal and state laws, we consider whether a superior authority, which prohibits certain conduct, can prevent a subordinate authority from implementing a rule that officially permits such conduct by punishing individuals who are engaged in the conduct officially permitted by the lower authority. We conclude that it can.

---

[4] This requires a slight caveat. Under the CSA, "the manufacture, distribution, or possession of marijuana [is] a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration preapproved research study." *Gonzales v. Raich*, 545 U.S. 1, 14 (2005); *see* 21 U.S.C. §§ 812(c), 823(f), 841(a)(1), 844(a). Thus, except as part of "a strictly controlled research project," federal law "designates marijuana as contraband for *any* purpose." *Raich*, 545 U.S. at 24, 27.

DOJ, without taking any legal action against the Medical Marijuana States, prevents them from implementing their laws that authorize the use, distribution, possession, or cultivation of medical marijuana by prosecuting individuals for use, distribution, possession, or cultivation of medical marijuana that is authorized by such laws. By officially permitting certain conduct, state law provides for non-prosecution of individuals who engage in such conduct. If the federal government prosecutes such individuals, it has prevented the state from giving practical effect to its law providing for non-prosecution of individuals who engage in the permitted conduct.

We therefore conclude that, at a minimum, § 542 prohibits DOJ from spending funds from relevant appropriations acts for the prosecution of individuals who engaged in conduct permitted by the State Medical Marijuana Laws and who fully complied with such laws.

3

Appellants in *McIntosh* and *Kynaston* argue for a more expansive interpretation of § 542. They contend that the rider prohibits DOJ from bringing federal marijuana charges against anyone licensed or authorized under a state medical marijuana law for activity occurring within that state, including licensees who had failed to comply fully with state law.

For instance, Appellants in *Kynaston* argue that "implementation of laws necessarily involves all aspects of putting the law into practical effect, including interpretation of the law, means of application and enforcement, and procedures and processes for determining the outcome of

individual cases." Under this view, if the federal government prosecutes individuals who are not strictly compliant with state law, it will prevent the states from implementing the *entirety* of their laws that authorize medical marijuana by preventing them from giving practical effect to the penalties and enforcement mechanisms for engaging in unauthorized conduct. Thus, argue the *Kynaston* Appellants, the Department of Justice must refrain from prosecuting "unless a person's activities are so clearly outside the scope of a state's medical marijuana laws that reasonable debate is not possible."

To determine whether such construction is correct, we must decide whether the phrase "laws that authorize" includes not only the rules authorizing certain conduct but also the rules delineating penalties and enforcement mechanisms for engaging in unauthorized conduct. In answering that question, we consider the ordinary meaning of "laws that authorize the use, distribution, possession, or cultivation of medical marijuana." "Law" has many different meanings, including the following definitions that appear most relevant to § 542:

> "The aggregate of legislation, judicial precedents, and accepted legal principles; the body of authoritative grounds of judicial and administrative action; esp., the body of rules, standards, and principles that the courts of a particular jurisdiction apply in deciding controversies brought before them."

> "The set of rules or principles dealing with a specific area of a legal system <copyright law>."

*Law*, *Black's Law Dictionary* (10th ed. 2014); and:

> "1. a. The body of rules, whether proceeding from formal enactment or from custom, which a particular state or community recognizes as binding on its members or subjects. (In this sense usually *the law*.)."

> "One of the individual rules which constitute the 'law' (sense 1) of a state or polity. . . . The plural has often a collective sense . . . approaching sense 1."

*Law*, *Oxford English Dictionary*, www.oed.com. The relative pronoun "that" restricts "laws" to those laws authorizing the use, distribution, possession, or cultivation of medical marijuana. *See* Bryan A. Garner, *Garner's Dictionary of Legal Usage* 887–89 (3d ed. 2011). In sum, the ordinary meaning of § 542 prohibits the Department of Justice from preventing the implementation of the Medical Marijuana States' laws or sets of rules and only those rules that authorize medical marijuana use.

We also consider the context of § 542. The rider prohibits DOJ from preventing forty states, the District of Columbia, and two territories from implementing their medical marijuana laws. Not only are such laws varied in composition but they also are changing as new statutes are enacted, new regulations are promulgated, and new administrative and judicial decisions interpret such statutes and regulations. Thus, § 542 applies to a wide variety of laws that are in flux.

Given this context and the restriction of the relevant laws to those that authorize conduct, we conclude that § 542 prohibits the federal government only from preventing the implementation of those specific rules of state law that authorize the use, distribution, possession, or cultivation of medical marijuana. DOJ does not prevent the implementation of rules authorizing conduct when it prosecutes individuals who engage in conduct unauthorized under state medical marijuana laws. Individuals who do not strictly comply with all state-law conditions regarding the use, distribution, possession, and cultivation of medical marijuana have engaged in conduct that is unauthorized, and prosecuting such individuals does not violate § 542. Congress could easily have drafted § 542 to prohibit interference with laws that address medical marijuana or those that regulate medical marijuana, but it did not. Instead, it chose to proscribe preventing states from implementing laws that authorize the use, distribution, possession, and cultivation of medical marijuana.

B

The parties cite various pieces of legislative history to support their arguments regarding the meaning of § 542.

We cannot consider such sources. It is a fundamental principle of appropriations law that we may only consider the text of an appropriations rider, not expressions of intent in legislative history. "An agency's discretion to spend appropriated funds is cabined only by the 'text of the appropriation,' not by Congress' expectations of how the funds will be spent, as might be reflected by legislative history." *Salazar v. Ramah Navajo Chapter*, 132 S. Ct. 2181, 2194–95 (2012) (quoting *Int'l Union, UAW v. Donovan*,

746 F.2d 855, 860–61 (D.C. Cir. 1984) (Scalia, J.)). In *International Union*, then-Judge Scalia explained:

> As the Supreme Court has said (in a case involving precisely the issue of Executive compliance with appropriation laws, although the principle is one of general applicability): "legislative intention, without more, is not legislation." The issue here is not how Congress expected or intended the Secretary to behave, but how it *required* him to behave, through the only means by which it can (as far as the courts are concerned, at least) require anything—the enactment of legislation. Our focus, in other words, must be upon the text of the appropriation.

746 F.2d at 860–61 (quoting *Train v. City of New York*, 420 U.S. 35, 45 (1975)); *see also Cherokee Nation of Okla. v. Leavitt*, 543 U.S. 631, 646 (2005) ("The relevant case law makes clear that restrictive language contained in Committee Reports is not legally binding."); *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) ("'[I]ndicia in committee reports and other legislative history as to how the funds should or are expected to be spent do not establish any legal requirements on' the agency." (citation omitted)).

We recognize that some members of Congress may have desired a more expansive construction of the rider, while others may have preferred a more limited interpretation. However, we must consider only the text of the rider. If Congress intends to prohibit a wider or narrower range of DOJ actions, it certainly may express such intention, hopefully with greater clarity, in the text of any future rider.

IV

We therefore must remand to the district courts. If DOJ wishes to continue these prosecutions, Appellants are entitled to evidentiary hearings to determine whether their conduct was completely authorized by state law, by which we mean that they strictly complied with all relevant conditions imposed by state law on the use, distribution, possession, and cultivation of medical marijuana. We leave to the district courts to determine, in the first instance and in each case, the precise remedy that would be appropriate.

We note the temporal nature of the problem with these prosecutions. The government had authority to initiate criminal proceedings, and it merely lost funds to continue them. DOJ is currently prohibited from spending funds from specific appropriations acts for prosecutions of those who complied with state law. But Congress could appropriate funds for such prosecutions tomorrow. Conversely, this temporary lack of funds could become a more permanent lack of funds if Congress continues to include the same rider in future appropriations bills. In determining the appropriate remedy for any violation of § 542, the district courts should consider the temporal nature of the lack of funds along with Appellants' rights to a speedy trial under the Sixth Amendment and the Speedy Trial Act, 18 U.S.C. § 3161.[5]

---

[5] The prior observation should also serve as a warning. To be clear, § 542 does not provide immunity from prosecution for federal marijuana offenses. The CSA prohibits the manufacture, distribution, and possession of marijuana. Anyone in any state who possesses, distributes, or manufactures marijuana for medical or recreational purposes (or attempts or conspires to do so) is committing a federal crime. The federal government can prosecute such offenses for up to five years after they occur. *See* 18 U.S.C. § 3282. Congress currently restricts the government

## V

For the foregoing reasons, we vacate the orders of the district courts and remand with instructions to conduct an evidentiary hearing to determine whether Appellants have complied with state law.[6]

## **VACATED    AND    REMANDED    WITH INSTRUCTIONS.**

---

from spending certain funds to prosecute certain individuals. But Congress could restore funding tomorrow, a year from now, or four years from now, and the government could then prosecute individuals who committed offenses while the government lacked funding. Moreover, a new president will be elected soon, and a new administration could shift enforcement priorities to place greater emphasis on prosecuting marijuana offenses.

Nor does any state law "legalize" possession, distribution, or manufacture of marijuana. Under the Supremacy Clause of the Constitution, state laws cannot permit what federal law prohibits. U.S. Const. art VI, cl. 2. Thus, while the CSA remains in effect, states cannot actually authorize the manufacture, distribution, or possession of marijuana. Such activity remains prohibited by federal law.

[6] We have jurisdiction under the All Writs Act to "issue all writs necessary or appropriate in aid of [our] jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The writ of mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes." *United States v. Guerrero*, 693 F.3d 990, 999 (9th Cir. 2012) (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004)). We **DENY** the petitions for the writ of mandamus because the petitioners have other means to obtain their desired relief and because the district courts' orders were not clearly erroneous as a matter of law. *See id.* (citing *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 654–55 (9th Cir. 2010)). In addition, we **GRANT** the motion for leave to file an oversize reply brief, ECF No. 47-2; **DENY** the motion to strike, ECF No. 52; and **DENY** the motion for judicial notice, ECF No. 53.