# SUPREME COURT OF THE UNITED STATES

STANDING AKIMBO, LLC, ET AL., *v.* UNITED STATES

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

No. 20–645.  Decided June 28, 2021

The petition for a writ of certiorari is denied.

Statement of JUSTICE THOMAS respecting the denial of
certiorari.

Sixteen years ago, this Court held that Congress' power
to regulate interstate commerce authorized it "to prohibit
the local cultivation and use of marijuana." *Gonzales* v.
*Raich*, 545 U. S. 1, 5 (2005).  The reason, the Court ex-
plained, was that Congress had "enacted comprehensive
legislation to regulate the interstate market in a fungible
commodity" and that "exemption[s]" for local use could un-
dermine this "comprehensive" regime.  *Id.*, at 22–29.  The
Court stressed that Congress had decided "to prohibit *en-
tirely* the possession or use of [marijuana]" and had "desig-
nate[d] marijuana as contraband for *any* purpose."  *Id.,* at
24–27 (first emphasis added).  Prohibiting any intrastate
use was thus, according to the Court, "'necessary and
proper'" to avoid a "gaping hole" in Congress' "closed regu-
latory system."  *Id.,* at 13, 22 (citing U. S. Const., Art. I, §8).

Whatever the merits of *Raich* when it was decided, fed-
eral policies of the past 16 years have greatly undermined
its reasoning.  Once comprehensive, the Federal Govern-
ment's current approach is a half-in, half-out regime that
simultaneously tolerates and forbids local use of marijuana.
This contradictory and unstable state of affairs strains
basic principles of federalism and conceals traps for the un-
wary.

This case is a prime example.  Petitioners operate a med-

ical-marijuana dispensary in Colorado, as state law per-
mits. And, though federal law still flatly forbids the intra-
state possession, cultivation, or distribution of marijuana,
Controlled Substances Act, 84 Stat. 1242, 1247, 1260, 1264,
21 U. S. C. §§802(22), 812(c), 841(a), 844(a),[1] the Govern-
ment, post-*Raich*, has sent mixed signals on its views. In
2009 and 2013, the Department of Justice issued memoran-
dums outlining a policy against intruding on state legaliza-
tion schemes or prosecuting certain individuals who comply
with state law.[2] In 2009, Congress enabled Washington
D. C.'s government to decriminalize medical marijuana un-
der local ordinance.[3] Moreover, in every fiscal year since
2015, Congress has prohibited the Department of Justice
from "spending funds to prevent states' implementation of
their own medical marijuana laws." *United States* v. *McIn-
tosh*, 833 F. 3d 1163, 1168, 1175–1177 (CA9 2016) (inter-
preting the rider to prevent expenditures on the prosecu-
tion of individuals who comply with state law).[4] That policy

———————

[1] A narrow exception to federal law exists for Government-approved
research projects, but that exception does not apply here. 84 Stat. 1271,
21 U. S. C. §872(e).

[2] See Memorandum from Dep. Atty. Gen. to Selected U. S. Attys., In-
vestigations and Prosecutions in States Authorizing the Medical Use of
Marijuana (Oct. 19, 2009); Memorandum from Dep. Atty. Gen. to All
U. S. Attys., Guidance Regarding Marijuana Enforcement (Aug. 29,
2013). In 2018, however, the Department of Justice rescinded those and
three other memorandums related to federal marijuana laws. Memoran-
dum from U. S. Atty. Gen. to All U. S. Attys., Marijuana Enforcement
(Jan. 4, 2018). Despite that rescission, in 2019 the Attorney General
stated that he was "'accepting the [2013] Memorandum for now.'" Som-
erset, Attorney General Barr Favors a More Lenient Approach to Can-
nabis Prohibition, Forbes, Apr. 15, 2019.

[3] See Congress Lifts Ban on Medical Marijuana for Nation's Capitol,
Americans for Safe Access, Dec. 13, 2009.

[4] Despite the Federal Government's recent pro-marijuana actions, the
Attorney General has declined to use his authority to reschedule mariju-
ana to permit legal, medicinal use. *E.g., Krumm* v. *Holder*, 594 Fed.
Appx. 497, 498–499 (CA10 2014) (citing §811(a)); Denial of Petition to
Initiate Proceedings to Reschedule Marijuana, 81 Fed. Reg. 53688

has broad ramifications given that 36 States allow medicinal marijuana use and 18 of those States also allow recreational use.[5]

Given all these developments, one can certainly understand why an ordinary person might think that the Federal Government has retreated from its once-absolute ban on marijuana. See, *e.g.,* Halper, Congress Quietly Ends Federal Government's Ban on Medical Marijuana, L. A. Times, Dec. 16, 2014. One can also perhaps understand why business owners in Colorado, like petitioners, may think that their intrastate marijuana operations will be treated like any other enterprise that is legal under state law.

Yet, as petitioners recently discovered, legality under state law and the absence of federal criminal enforcement do not ensure equal treatment. At issue here is a provision of the Tax Code that allows most businesses to calculate their taxable income by subtracting from their gross revenue the cost of goods sold *and* other ordinary and necessary business expenses, such as rent and employee salaries. See 26 U. S. C. §162(a); 26 CFR. 1.61–3(a) (2020). But because of a public-policy provision in the Tax Code, companies that deal in controlled substances prohibited by federal law may subtract only the cost of goods sold, not the other ordinary and necessary business expenses. See 26 U. S. C. §280E. Under this rule, a business that is still in the red after it pays its workers and keeps the lights on might nonetheless owe substantial federal income tax.

As things currently stand, the Internal Revenue Service is investigating whether petitioners deducted business expenses in violation of §280E, and petitioners are trying to

_____

(2016).

[5] Hartman, Cannabis Overview, Nat. Conference of State Legislatures (June 22, 2021), https://www.ncsl.org/research/civil-and-criminal-justice/marijuana-overview.aspx. The state recreational use number does not include South Dakota, where a state court overturned a ballot measure legalizing marijuana. *Ibid.*

prevent disclosure of relevant records held by the State.[6]  In other words, petitioners have found that the Government's willingness to often look the other way on marijuana is more episodic than coherent.

This disjuncture between the Government's recent laissez-faire policies on marijuana and the actual operation of specific laws is not limited to the tax context.  Many marijuana-related businesses operate entirely in cash because federal law prohibits certain financial institutions from knowingly accepting deposits from or providing other bank services to businesses that violate federal law.  Black & Galeazzi, Cannabis Banking: Proceed With Caution, American Bar Assn., Feb. 6, 2020.  Cash-based operations are understandably enticing to burglars and robbers.  But, if marijuana-related businesses, in recognition of this, hire armed guards for protection, the owners and the guards might run afoul of a federal law that imposes harsh penalties for using a firearm in furtherance of a "drug trafficking crime." 18 U. S. C. §924(c)(1)(A).  A marijuana user similarly can find himself a federal felon if he just possesses a firearm. §922(g)(3).  Or petitioners and similar businesses may find themselves on the wrong side of a civil suit under the Racketeer Influenced and Corrupt Organizations Act.  See, *e.g., Safe Streets Alliance* v. *Hickenlooper*, 859 F. 3d 865, 876–877 (CA10 2017) (permitting such a suit to proceed).

I could go on.  Suffice it to say, the Federal Government's current approach to marijuana bears little resemblance to

_____

[6] In their petition for a writ of certiorari, petitioners contend that the lack of a deduction for ordinary business expenses causes the tax to fall outside the Sixteenth Amendment's authorization of "taxes on incomes." Therefore, they contend the tax is unconstitutional.  That argument implicates several difficult questions, including the differences between "direct" and "indirect" taxes and how to interpret the Sixteenth Amendment.  Cf. *National Federation of Independent Business* v. *Sebelius*, 567 U. S. 519, 570–571 (2012); *Taft* v. *Bowers*, 278 U. S. 470, 481–482 (1929). In light of the still-developing nature of the dispute below, I agree with the Court's decision not to delve into these questions.

the watertight nationwide prohibition that a closely divided Court found necessary to justify the Government's blanket prohibition in *Raich*. If the Government is now content to allow States to act "as laboratories" "'and try novel social and economic experiments,'" *Raich*, 545 U. S., at 42 (O'Connor, J., dissenting), then it might no longer have authority to intrude on "[t]he States' core police powers . . . to define criminal law and to protect the health, safety, and welfare of their citizens." *Ibid.* A prohibition on intrastate use or cultivation of marijuana may no longer be necessary *or* proper to support the Federal Government's piecemeal approach.