This Opinion is a
Precedent of the TTAB

Hearing: April 18, 2017                                    Mailed: June 16, 2017

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

*In re PharmaCann LLC*
_____

Serial No. 86520135
Serial No. 86520138
(Consolidated)
_____

Michael A. Parks of Thompson Coburn LLP for PharmaCann LLC.

Robert J. Struck, Trademark Examining Attorney,[1] Law Office 109,
    Michael Kazazian, Managing Attorney.

_____

Before Taylor, Kuczma, and Larkin,
    Administrative Trademark Judges.

Opinion by Larkin, Administrative Trademark Judge:

PharmaCann LLC ("Applicant") seeks registration on the Principal Register of the

service marks PHARMACANN and PHARMACANNIS in standard characters for

services identified (as amended) as "retail store services featuring medical

---

[1] Examining Attorney Robert J. Struck examined Application Serial No. 86520135 and Examining Attorney Jeffrey J. Look examined Application Serial No. 86520138. After the appeals were filed, Application Serial No. 86520138 was reassigned to Mr. Struck, who filed the U.S. Patent and Trademark Office's brief and appeared at the oral hearing. We will refer to both Examining Attorneys in this opinion in the singular as the "Examining Attorney."

marijuana," in International Class 35, and "dispensing of pharmaceuticals featuring medical marijuana," in International Class 44.[2]

The Trademark Examining Attorney has refused registration of both marks under Sections 1 and 45 of the Trademark Act, 15 U.S.C. §§ 1051 and 1127, on the ground that Applicant cannot allege a *bona fide* intention to make lawful use of the marks in commerce because the services identified in Applicant's applications involve the distribution and dispensing of marijuana, a controlled substance whose distribution and dispensing are illegal under the federal Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 *et seq.* After the Examining Attorney made the refusals final, Applicant timely appealed in both cases. The cases are fully briefed, and the Examining Attorney and counsel for Applicant appeared at an oral hearing before the panel on April 18, 2017. We affirm the refusals to register the marks in both applications.

## I.   Prosecution History and Record on Appeal

The Examining Attorney issued first Office Actions on both applications refusing registration of Applicant's marks on the ground that Applicant did not have a *bona fide* intention to make lawful use of its marks in commerce because Applicant's goods and services, as originally identified in the applications,[3] consisted of or included

---

[2] Application Serial No. 86520135 to register PHARMACANN and Application Serial No. 86520138 to register PHARMACANNIS were both filed on January 30, 2015 under Section 1(b) of the Trademark Act, 15 U.S.C. §1051(b), on the basis of Applicant's allegation of a *bona fide* intention to use the marks in commerce.

[3] The applications originally covered "dispensaries selling marijuana; smokers articles; books; education services, namely, patient training and counseling; medical services, namely, providing natural, holistic and alternative therapies; dispensary services, namely, selling substances not banned by the Controlled Substances Act; public advocacy to make patients, physicians, physician groups, hospitals, patient groups and government bodies aware of

items or activities that are prohibited by the CSA. The Examining Attorney made of record in Application Serial No. 86520138 two Internet articles discussing Applicant's intention to operate a medical marijuana dispensary in Illinois, where Applicant is located and where dispensing medical marijuana is lawful under state law. The first page of one of the articles (April 24, 2015 Office Action at 2) is reproduced below:



natural, holistic and alternative therapies; conduct nutraceutical and pharmaceutical research and development, including in vitro, in vivo and human trials; dispensaries selling products that are not Schedule I substances, e.g., hemp oil; conducting research and development of hemp and other non-Schedule I varieties of cannabis related plants; helping others obtain governmental licenses and clearance; assisting others with financial transactions within the cannabis industry; and consulting services in the field of medical marijuana, natural, holistic and alternative therapies, and research in the field of cannabis."

The Examining Attorney also requested that Applicant amend and clarify its identifications of services in the two applications.

In Applicant's responses to the first Office Actions, Applicant traversed the substantive refusals, deleted its original identifications of goods and services in both applications, and proposed the following amended identification: "Dispensaries selling medical marijuana in compliance with Illinois state law," in International Class 35.[4] The Examining Attorney then issued second Office Actions on both applications in which he made final the substantive refusals and the refusals based upon Applicant's identifications of services on the ground that the amended identifications remained indefinite.

Applicant timely appealed in both cases. Applicant filed its main appeal briefs in both cases together with requests to remand the applications to the Examining Attorney to consider further amendments to the identifications of services to "retail store services featuring medical marijuana," in International Class 35, and "dispensing of pharmaceuticals featuring medical marijuana," in International Class 44.[5] The Board suspended the appeals and remanded the applications to the Examining Attorney for consideration of the proposed amendments.

---

[4] The CSA does not use or define the term "medical marijuana." The Board may take judicial notice of dictionary definitions, *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imp. Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983), including online dictionaries that exist in printed form or regular fixed editions. *In re Red Bull GmbH*, 78 USPQ2d 1375, 1377 (TTAB 2006). We judicially notice a definition of "medical marijuana" from Dictionary.com as "marijuana prescribed by a doctor and used as a medicine" (www.dictionary.com, accessed on June 15, 2017).

[5] After Applicant filed its main briefs, the Board consolidated the appeals at the request of the Examining Attorney. The Examining Attorney filed a single brief and Applicant filed a

The Examining Attorney accepted and entered Applicant's amendments of its identifications of services in both applications, and withdrew the indefiniteness refusals, but maintained the final refusals under Sections 1 and 45 of the Trademark Act. The consolidated appeals were subsequently resumed.

## II. Analysis of Unlawful Use Refusals

"'We have consistently held that, to qualify for a federal . . . registration, the use of a mark in commerce must be 'lawful'.'" *In re JJ206, LLC*, 120 USPQ2d 1568, 1569 (TTAB 2016), *appeal docketed*, No. 2017-1350 (Fed. Cir. December 8, 2016) (affirming refusal to register POWERED BY JUJU and JUJU JOINTS for cannabis vaporizing and delivery devices for lack of lawful use in commerce) (quoting *In re Brown*, 119 USPQ2d 1350, 1351 (TTAB 2016) (affirming refusal to register HERBAL ACCESS and design for retail store services featuring herbs, including marijuana, for lack of lawful use in commerce)). *See, e.g.,* Trademark Rule 2.69, 37 C.F.R. § 2.69 ("[w]hen the sale or transportation of any product for which registration is sought is regulated under an Act of Congress, the Patent and Trademark Office may make appropriate inquiry as to compliance with such Act for the sole purpose of determining lawfulness of the commerce recited in the application."); *Coahoma Chem. Co. v. Smith*, 113 USPQ 413 (Com'r Pat. & Trademarks 1957) (unlawful use under federal Economic Poisons Act); *In re Stellar Int'l Inc.* 159 USPQ 48 (TTAB 1968) (unlawful use under federal Food, Drug and Cosmetics Act); *The Clorox Co. v. Armour-Dial, Inc.*, 214 USPQ 850,

---

single reply brief in both appeals. Citations to the briefs in this opinion are to the TTABVUE docket for Application Serial No. 86520135.

851 (TTAB 1982) ( same); *see also United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 53 USPQ2d 1929, 1932 (10th Cir. 2000) (lawful use in commerce is required to establish trademark rights); *CreAgri, Inc. v. USANA Health Sciences, Inc.*, 474 F.3d 626, 81 USPQ2d 1592, 1595 (9th Cir. 2007) (noting that "[i]t has long been the policy of the PTO's Trademark Trial and Appeal Board that use in commerce only creates trademark rights when the use is *lawful*" and "agree[ing] with the PTO's policy and hold[ing] that only *lawful* use in commerce can give rise to trademark priority.").

Thus, for a mark to be eligible for federal registration, "any goods or services for which the mark is used must not be illegal under federal law." *Brown*, 119 USPQ2d at 1351. In the context of an intent-to-use application under Section 1(b) of the Trademark Act, if the identified goods or services with which the mark is intended to be used are illegal under federal law, "the applicant cannot use its mark in lawful commerce, and it is a legal impossibility for the applicant to have the requisite bona fide intent to use the mark." *JJ206*, 120 USPQ2d at 1569 (internal quotation omitted).

"[R]egistration generally will not be refused based on unlawful use in commerce unless either (1) a violation of federal law is indicated by the application or other evidence, such as when a court or a federal agency responsible for overseeing activity in which the applicant is involved, and which activity is relevant to its application, has issued a finding of noncompliance under the relevant statute or regulation, or (2) when the applicant's application-related activities involve a *per se* violation of a

federal law." *Brown*, 119 USPQ2d at 1351. These appeals involve claimed *per se* violations of the CSA based upon the final amended identifications of services in the applications, "retail store services featuring medical marijuana" and "dispensing of pharmaceuticals featuring medical marijuana." *See JJ206*, 120 USPQ2d at 1569 (affirming refusals to register where the applicant "explicitly identified its goods as vaporizing devices for cannabis or marijuana.").

The Examining Attorney's position on appeal is straightforward and may be summarized as follows: The CSA prohibits, among other things, manufacturing, distributing, or dispensing controlled substances. 21 U.S.C. § 841(a)(1). Marijuana is a Schedule I controlled substance under the CSA. 21 U.S.C. § 812(c) Schedule I (c)(10).[6] As a result, "[t]he dissemination, distribution and delivery of marijuana is prohibited under all circumstances pursuant to the CSA. The applicant's services consist of retail store services that feature the sale and distribution of medical marijuana and dispensing of pharmaceuticals featuring medical marijuana. These activities constitute a *per se* violation of the [CSA]." 16 TTABVUE 7.

Applicant advances two primary arguments supporting its claim that its intended use of its marks does not constitute a *per se* violation of the CSA. First, Applicant argues that "[s]ince 2009 the Department of Justice has consistently refused to treat medical marijuana as an illegal drug by consistently refusing to enforce the Controlled Substances Act against it." 7 TTABVUE 2. Applicant claims that "[o]n October 19, 2009, the United States Department of Justice announced that it no

---

[6] The CSA uses the spelling "marihuana." 21 U.S.C. § 802(16).

longer would prosecute caregivers for providing medical marijuana or individuals for using medical marijuana, so long as the 'actions are in clear and unambiguous compliance with existing state laws providing for the medical use of marijuana,'" and that "[o]n August 29, 2013, the Department of Justice renewed and reiterated its stance on not enforcing the [CSA] against medical marijuana." 7 TTABVUE 4.[7]

Second, Applicant argues that "Congress has taken the same position as the Department of Justice," 7 TTABVUE 4, because in the Consolidated and Further Continuing Appropriations Act of 2015 (as renewed in the Consolidated Appropriations Act of 2016, subsequent continuing resolutions, and, following the briefing and oral hearing in this case, in the Consolidated Appropriations Act, 2017) (collectively the "Appropriations Acts"), Congress has prohibited the Department of Justice from expending funds to prevent states that have legalized medical marijuana, including Applicant's home state of Illinois, from implementing their own state laws authorizing the use, distribution, possession, or cultivation of medical marijuana. Applicant argues that "[g]iven the United States Department of Justice's

---

[7] Applicant did not make the referenced Department of Justice policy statements of record during prosecution, but merely included links to the Department's website in its main appeal brief. 7 TTABVUE 4. The "record in the application should be complete prior to the filing of an appeal," Trademark Rule 2.142(d), 37 C.F.R. § 2,142(d), and, in any event, the Board has "made clear that providing hyperlinks to Internet materials is insufficient to make such materials of record." *In re Powermat Inc.*, 105 USPQ2d 1789, 1791 (TTAB 2013) (citing *In re HSB Solomon Assocs. LLC*, 102 USPQ2d 1269, 1274 (TTAB 2012) ("a reference to a website's internet address is not sufficient to make the content of that website or any pages from that website of record.")). Both Applicant and the Examining Attorney discussed the referenced August 29, 2013 memorandum (the "Cole Memorandum"), however, and the Examining Attorney quoted from it in his brief, 16 TTABVUE 7-9 n.6, so while the Cole Memorandum is not of record, we have considered the quoted statements from it, some of which were also discussed by the Board in *JJ206. Cf.* TRADEMARK BOARD MANUAL OF PROCEDURE Section 1203.02(e) and cases cited therein.

express and consistent decision not to treat medical marijuana as a violation of the Controlled Substances Act and Congress' decision not to fund the Department of Justice to enforce the Controlled Substances Act against medical marijuana, it would make no sense and serve no purpose for the Board to take a different position in ruling on Applicant's trademark application for medical marijuana." 7 TTABVUE 7.

Applicant also argues that the "Examining Attorney and the Board should defer to DOJ on what should and should not be treated as violating the Controlled Substances Act," citing *Satinine Societa in Nome Collettivo di S.A. eM. Usellini v. P.A.B. Produits et Appareils de Beaute*, 209 USPQ 958 (TTAB 1981), for the proposition that "the Board's practice has long been to defer to its sister agencies on legality issues within their jurisdiction . . ." 23 TTABVUE 3. According to Applicant, "DOJ has made clear it is not treating medical marijuana as a violation of the Controlled Substances Act. . . . [and] [i]f DOJ is not treating it as a violation, it makes no sense (and is contrary to Board precedent) for the Examining Attorney to rule otherwise and to bar registration on that basis alone." 23 TTABVUE 3-4.[8]

Applicant's first argument regarding the impact of the Cole Memorandum on the illegality of medical marijuana under the CSA is foreclosed by our decision in *JJ206*, in which we "reject[ed] Applicant's argument that its use and intended use of the

---

[8] Applicant also offers to amend its identifications of services further to "'retail store services featuring medical marijuana in accordance with Department of Justice guidelines' in International Class 35 and 'dispensing of pharmaceuticals featuring medical marijuana in accordance with Department of Justice guidelines' in International Class 44.'" 7 TTABVUE 8. We need not consider the proposed amendments because we find below that neither the current Department of Justice prosecution guidelines, nor the current Congressional prohibition on the expenditure of funds for prosecution, makes Applicant's intended services legal under the CSA.

mark are lawful based on the [Cole] memorandum." 120 USPQ2d at 1571. The Board held that the Cole Memorandum provided "no support for the registration of a trademark used on goods whose sale is illegal under federal law" because by its terms it was "intended only 'as a guide to the exercise of investigative and prosecutorial discretion' and specifically provide[d] that '[n]either the guidance herein nor any state or local law provides a defense to a violation of federal law, including any civil or criminal violation of the CSA.'" *Id*. n.18 (quotation omitted).

Applicant claims that the Board "has expressly left open the question whether this type of [medical marijuana] use is subject to an 'unlawful use' rejection." 7 TTABVUE 3 (citing *Brown*, 119 USPQ2d at 1531 n. 3 ("[W]e do not address whether use not lawful under federal law, but not prosecuted by federal authorities, is thereby rendered sufficiently lawful to avoid the unlawful use refusal.")). In *JJ206*, the Board addressed the question left open in *Brown* in the context of recreational marijuana, 120 USPQ2d at 1571 n.15, and concluded that the Cole Memorandum did not make the applicant's intended use of its mark for marijuana paraphernalia lawful. The Board's conclusion in *JJ206* that the Cole Memorandum "provides no support for the registration of a trademark used on goods whose sale is illegal under federal law," *id*. n.18, applies with equal force to Applicant's intended use of its marks for distributing and dispensing medical marijuana. In both contexts, the Cole Memorandum lacks the force of law and "does not and cannot override the CSA." *Id*.[9]

---

[9] The Cole Memorandum thus is not a determination by the Department of Justice "on what should and should not be treated as violating the [CSA]," as Applicant claims. 23 TTABVUE 3.

Applicant's second argument based upon the Appropriations Acts is a novel one, but it is similarly unavailing. In *United States v. McIntosh*, 833 F.3d 1163, 1169-70 (9th Cir. 2016), the United States Court of Appeals for the Ninth Circuit described the history of the first two Appropriations Acts as follows:

> In December 2014, Congress enacted the following rider in an omnibus appropriations bill funding the government through September 30, 2015:
>
> None of the funds made available in this Act to the Department of Justice may be used, with respect to the States of Alabama, Alaska, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, Oregon, Rhode Island, South Carolina, Tennessee, Utah, Vermont, Washington, and Wisconsin, to prevent such States from implementing their own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana.[10]
>
> Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235, § 538, 128 Stat. 2130, 2217 (2014). Various short-term measures extend[ed] the appropriations and the rider through December 22, 2015. On December 18, 2015, Congress enacted a new appropriations act, which appropriate[d] funds through the fiscal year ending September 30, 2016, and include[d] essentially the same rider in § 542. Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, § 542, 129 Stat. 2242, 2332-33 (2015) (adding Guam and Puerto Rico and changing 'prevent such States from implementing their own State laws' to 'prevent any of them from implementing their own laws').[11]

---

[10] This rider and its successors are sometimes referred to as the "Rohrabacher-Farr Amendment" after two of its original sponsors.

[11] Following the 2016 Appropriations Act, government funding was provided pursuant to continuing resolutions through April 28, 2017. *See United States v. Gentile*, 2017 WL 1437532, *3, n.7 (E.D. Cal. April 24, 2017). On April 28, 2017, Congress passed and the

In *McIntosh*, which involved "ten cases [with] consolidated interlocutory appeals and petitions for writs of mandamus arising out of orders entered by three district courts in two states," 833 F.3d at 1168,[12] the Ninth Circuit decided "whether criminal defendants may avoid prosecution for various federal marijuana offenses on the basis of a congressional appropriations rider that prohibits the United States Department of Justice from spending funds to prevent states' implementation of their own medical marijuana laws." *Id.* at 1168. The court ultimately concluded that the answer was "yes" if "their conduct was completely authorized by state law, by which we mean that they complied with all relevant conditions imposed by state law on the use, distribution, possession, and cultivation of medical marijuana." *Id.* at 1179. In doing so, however, the court also concluded that the Appropriations Acts and the Rohrabacher-Farr Amendment did not make medical marijuana legal under the CSA. We find the Ninth Circuit's analysis instructive and applicable to Applicant's argument under the Appropriations Acts and the Rohrabacher-Farr Amendment on this appeal.

---

President signed into law another continuing resolution funding the federal government through May 5, 2017. Congress subsequently passed and the President signed into law the Consolidated Appropriations Act, 2017 funding the federal government through September 30, 2017. Consolidated Appropriations Act, 2017, Public Law No. 115-31 H.R. 244 (2017). Section 537 of the 2017 Appropriations Act contains the substance of the Rohrabacher-Farr Amendment and adds the states of Arkansas, Georgia, Louisiana, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, Texas, Virginia, West Virginia, and Wyoming to its coverage.

[12] The prosecutions of alleged medical marijuana-related violations of the CSA at issue in *McIntosh* illustrate the inaccuracy of Applicant's claim that "[s]ince 2009, the Department of Justice has consistently refused to treat medical marijuana as an illegal drug by consistently refusing to enforce the [CSA] against it." 7 TTABVUE 2.

The Ninth Circuit first "read § 542 [of the 2016 Appropriation Act] with a view to its place in the overall statutory scheme for marijuana regulation, namely the CSA and the State Medical Marijuana Laws. The CSA prohibits the use, distribution, possession, or cultivation of any marijuana. See 21 U.S.C. §§ 841(a), 844(a)." *Id.* at 1176.[13] "The State Medical Marijuana Laws are those state laws that authorize the use, distribution, possession, or cultivation of medical marijuana. Thus, the CSA prohibits what the State Medical Marijuana Laws permit." *Id.*

After analyzing the role of the Appropriations Acts and the Rohrabacher-Farr Amendment within this statutory scheme, *id.* at 1176-80, the Ninth Circuit concluded:

> DOJ is currently prohibited from spending funds from specific appropriations acts for prosecutions of those who complied with state law. But Congress could appropriate funds for such prosecutions tomorrow. Conversely, this temporary lack of funds could become a more permanent lack of funds if Congress continues to include the same rider in future appropriations bills. In determining the appropriate remedy for any violation of § 542, the district court should consider the temporal nature of the lack of funds along with Appellants' rights to a speedy trial under the Sixth Amendment and the Speedy Trial Act, 18 U.S.C. § 3161.

*Id.* at 1179.

---

[13] The court qualified its statement by noting that under the CSA, "'the manufacture, distribution, or possession of marijuana [is] a criminal offense, with the sole exception being the use of the drug as part of a Food and Drug Administration preapproved research study.'" *Id.* at 1180 n.4 (quoting *Gonzales v. Raich*, 545 U.S. 1, 14 (2005)). "Thus, except as part of 'a strictly controlled research project,' federal law 'designates marijuana as contraband for *any* purpose." *Id.* (quoting *Raich*, 545 U.S. at 24). There is no evidence in the record that Applicant has sought research approval from the Food and Drug Administration with respect to its intended use of its marks in connection with medical marijuana.

The Ninth Circuit dropped a footnote from this penultimate paragraph in its decision that is directly relevant to the issue before us:

> The prior observation should also serve as a warning. To be clear, § 542 does not provide immunity from prosecution for federal marijuana offenses. *The CSA prohibits the manufacture, distribution, and possession of marijuana. Anyone in any state who possesses, distributes, or manufactures marijuana for medical or recreational purposes (or attempts or conspires to do so) is committing a federal crime.* The federal government can prosecute such offenses for up to five years after they occur. *See* 18 U.S.C. § 3282. Congress currently restricts the government from spending certain funds to prosecute certain individuals. But Congress could restore funding tomorrow, a year from now, or four years from now, and the government could then prosecute individuals who committed offenses while the government lacked funding. Moreover, a new president will be elected soon, and a new administration could shift enforcement priorities to place greater emphasis on prosecuting marijuana offenses.
>
> *Nor does any state law "legalize" possession, distribution, or manufacture of marijuana. Under the Supremacy Clause of the Constitution, state laws cannot permit what federal law prohibits. U.S. Const. art VI, cl. 2. Thus, while the CSA remains in effect, states cannot actually authorize the manufacture, distribution, or possession of marijuana. Such activity remains prohibited by federal law.*

*Id*. at 1180 n.5 (emphasis added).[14] "As this discussion in *McIntosh* makes clear, the CSA continues to apply in all 50 states, although the DOJ's ability to use certain funds to pursue individual prosecutions under that statute remains circumscribed to

---

[14] Our reliance upon and agreement with the Ninth Circuit's analysis, including the statements in the quoted footnote, and our conclusion in this opinion that Applicant's intended services involve *per se* violations of the CSA regardless of their possible legality under state law, are not a determination that Applicant's intended activities would be a prosecutable criminal offense under the CSA. That is a matter beyond our limited jurisdiction to determine the eligibility of Applicant's marks for federal registration. *See Brown*, 119 USPQ2d at 1352 n.11.

the extent we explained in *McIntosh* as long as the appropriations rider is in effect." *United States v. Nixon*, 839 F.3d 885, 888 (9th Cir. 2016) (holding that rider did not impact the ability of a district court to restrict the use of medical marijuana as a condition of probation).

We are persuaded by the Ninth Circuit's analysis in *McIntosh* that it remains illegal under the CSA to "distribute, or dispense, or possess with intent to . . . distribute, or dispense," marijuana, 21 U.S.C. § 841(a)(1), whether for recreational or medical use, even though Congress has temporarily prohibited the Department of Justice from expending funds to prevent any state that has legalized medical marijuana from implementing its own laws. We thus agree with the Examining Attorney that the services identified in the applications as amended, "retail store services featuring medical marijuana" and "dispensing of pharmaceuticals featuring medical marijuana," involve *per se* violations of the CSA. As a result, Applicant "cannot use its mark in lawful commerce, and it is a legal impossibility for [it] to have the requisite bona fide intent to use the mark." *JJ206*, 120 USPQ2d at 1569.[15]

We conclude by noting that the current version of the Rohrabacher-Farr Amendment to the Appropriations Acts indicates that all but a few of the states have

---

[15] The fact that under the CSA "[a]nyone in any state who possesses, distributes, or manufactures marijuana for medical or recreational purposes . . . is committing a federal crime," *McIntosh*, 833 F.3d at 1180 n.5, distinguishes this case from the hypothetical cases, posited by Applicant in its reply brief, in which the Board might reject interpretations by the FDA and the EPA of the federal statutes that they administer, in finding trademark uses unlawful. 23 TTABVUE 4. In affirming the refusals to register here, the Board is not "overrid[ing] its sister agency's determination on what should be treated as a violation of a law within the sister agency's jurisdiction," 23 TTABVUE 4, but instead finding a *per se* violation of the CSA by following the Ninth's Circuit's analysis that the distribution and dispensing of medical marijuana remain illegal under the CSA.

made the policy determination that medical marijuana can be beneficial, and that the passage and renewal of the Rohrabacher-Farr Amendment suggest that there may be support in Congress for reclassification of medical marijuana under the CSA from a Schedule I controlled substance to another status that would make its possession, distribution, and dispensing lawful under federal law. Arguments for such a change in the law must be directed to Congress, however, not this administrative tribunal. The U.S. Patent and Trademark Office examines applications for federal registration under the Trademark Act, which the Office and the Board have long interpreted to require use of a mark in commerce that is lawful under federal law as a prerequisite to registration. We must determine the eligibility of marijuana-related marks for federal registration by reference to the CSA as it is written, not as it might be enforced at any point in time by any particular Justice Department. The CSA in its current form makes Applicant's intended uses of its marks unlawful, and its marks are thus ineligible for federal registration.

**Decision**: The refusals to register are affirmed in both cases as to both International Class 35 and International Class 44.