DuBois, J.
I. INTRODUCTION
The U.S. Probation Office alleges that defendant Cameron Lauren Jackson violated the terms of his supervised release by testing positive for the use of marijuana on ten occasions during his term of federal supervision. Defendant maintains that his marijuana use was for medical reasons and was lawful under Pennsylvania's Medical Marijuana Act. Presently before the Court is defendant's Motion to Enjoin Use of [U.S. Department of Justice ("DOJ") ] Funds and Dismiss Violation Petition on the basis of a rider included in the 2019 Consolidated Appropriations Act, which prohibits DOJ from using its funds to "prevent" states from "implementing" their medical marijuana laws.
The Court now faces an issue of first impression in this Circuit: under the appropriations rider, is DOJ permitted to use its funds to prosecute a violation of supervised release premised on state law-compliant use of medical marijuana? For the reasons that follow, the Court concludes that the answer is no. Where a defendant shows that his use of medical marijuana was fully compliant with the applicable state law, the rider prohibits DOJ from using its funds to prosecute a violation of supervised release.
II. BACKGROUND
In 2012, defendant pled guilty to one count of possession with intent to distribute cocaine, cocaine base, and heroin in violation of 21 U.S.C. § 841(a)(1). Def. Mot. Enjoin DOJ & Dismiss Pet. ("Def. Mot.") 4; Gov't Resp. Def. Mot. Enjoin DOJ & Dismiss Pet. ("Gov't Resp.") 2. He was sentenced, inter alia , to 151 months of imprisonment, followed by 3 years of supervised release. See Def. Mot. 4 n.3. On November 18, 2016, the U.S. District Court for the Middle District of Pennsylvania vacated defendant's sentence pursuant to Johnson v. United States , --- U.S. ----, 135 S. Ct. 2551, 192 L.Ed.2d 569 (2015), and resentenced defendant to 21 months of imprisonment, followed by 3 years of supervised release. See Gov't Resp. 4; Def. Mot. 4. Defendant was released from incarceration and began his term of supervised release that day, having already overserved his prison sentence by several years. Gov't Resp. 4. On November 7, 2017, jurisdiction over defendant's supervised release was transferred to the Eastern District of Pennsylvania. Def. Mot. 4 n.3. His supervised release is *508 currently scheduled to end on November 17, 2019. Id. at 5.
Defendant's conditions of supervised release include, inter alia , a prohibition against committing any other federal, state, or local crime and purchasing, possessing, using, distributing, or administering any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician, during his term of supervision. See id. at 5-6.
The Government charges defendant with testing positive for the use of marijuana, a Schedule I controlled substance, on ten occasions between May 2018 and March 2019. Id. at 5. Defendant does not admit, in the motion, the ten charged positive drug tests and states that he was issued a medical marijuana identification card by the Pennsylvania Department of Health on July 6, 2018, authorizing him to use and possess medical marijuana. Id. The Court notes that two of the alleged positive drug tests predate the issuance of the medical marijuana identification card. See id. at 18 n.15.
The U.S. Probation Office notified defendant on several occasions that his use of marijuana was considered a violation of his supervised release and could result in a sanction. Violation of Supervised Release Pet. ("Pet.") 2. According to the U.S. Probation Office, defendant admitted to continuously using marijuana but argued his conduct was not a violation of supervised release because he was in possession of a medical marijuana identification card. Gov't Resp. 5. Defendant's identification card was renewed on January 19, 2019, and expires on January 19, 2020. Def. Mot. 5.
On March 8, 2019, the U.S. Probation Office filed a Report on Offender Under Supervision setting forth the allegations of defendant's marijuana use (ECF No. 8 ). On March 22, 2019, the Court issued an Order scheduling briefing on the novel legal issues presented by this case and a violation hearing for June 13, 2019 (ECF No. 10 ). In compliance with that Order, the U.S. Probation Office submitted the Petition for Violation of Supervised Release, dated March 25, 2019, charging defendant with violating the conditions of his supervised release by testing positive for marijuana use on ten occasions. Pet. 2. The Petition states that the violation warrants revocation of defendant's supervised release. Id. Upon consideration of the Petition, the Court, by Order dated March 26, 2019, issued a summons directing defendant to appear at a revocation hearing. This is the first violation petition filed against Jackson during his three-year term of supervised release. Def. Mot. 6. Defendant contends that at the time the petition was filed, he was compliant with all other conditions of his supervised release. Id.
On April 15, 2019, defendant filed a motion to enjoin the use of DOJ funds in this matter and to dismiss the violation petition (ECF No. 13 ). The Government responded on May 3, 2019 (ECF No. 14 ), and defendant filed a reply on May 7, 2019 (ECF No. 15 ). After a telephone conference with counsel for the parties on May 17, 2019, the Court decided that it was appropriate to rule on two issues of law presented by this case-the conflict between federal and state law on marijuana use and the effect of the appropriations rider on supervised release proceedings-before conducting further proceedings. The legal issues have been fully briefed by the parties and are now ripe for decision.
III. APPLICABLE LAW
A. Pennsylvania's Medical Marijuana Act
Pennsylvania enacted the Medical Marijuana Act in 2016. The Act provides that *509 "use or possession of medical marijuana ... is lawful within this Commonwealth" so long as the "patient" meets certain requirements. See 35 Pa. Stat. Ann. § 10231.303. To be eligible for medical marijuana under the Act, a "patient" must have one of seventeen enumerated "serious medical condition[s]," which include, inter alia , cancer, epilepsy, and glaucoma. Id. § 10231.103. The Act also requires a "patient" to "receive[ ] certification from a practitioner," to acquire the marijuana from an approved dispensary, and to be "in possession of a valid identification card issued by" the Pennsylvania Department of Health at any time they are in possession of medical marijuana. Id. § 10231.303.
B. Consolidated Appropriations Act
The U.S. Constitution assigns to Congress the power to appropriate government funding and forbids the Executive from spending money that has not been so allocated. See U.S. Const., art. I, §§ 8-9 ("Congress shall have Power To ... provide for the ... general Welfare of the United States; ... No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."). The Supreme Court has held that the Appropriations Clause of the U.S. Constitution is meant to "assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good, and not according to the individual favor of Government agents." See Office of Pers. Mgmt. v. Richmond , 496 U.S. 414, 428, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990).
On February 15, 2019, President Trump signed the Consolidated Appropriations Act, which funded the federal government through September 30, 2019. See Consolidated Appropriations Act, 2019, Pub. L. No. 116-6, 133 Stat. 13 (2019). The Act allocated funds to DOJ and included a rider at § 537, which provides, "[n]one of the funds made available under this Act to the Department of Justice may be used, with respect to [Pennsylvania and 49 other U.S. states and jurisdictions], to prevent any of them from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." Id. at § 537. This language has been included in every appropriations bill since 2014, differing only as to the states and jurisdictions that are named. See, e.g. , Consolidated and Further Continuing Appropriations Act 2015, Pub. L. No. 113-235, § 538, 128 Stat. 2130, 2217 (2014).
IV. DISCUSSION
Before deciding whether the appropriations rider contained in the Consolidated Appropriations Act prohibits DOJ from prosecuting a violation of supervised release the Court must determine whether state law-compliant use of medical marijuana violates the conditions of defendant's supervised release. Second, the Court must decide whether the rider applies to prohibit DOJ involvement in proceedings related to violations of supervised release. Finally, if the rider applies to supervised release proceedings, the Court must determine whether it is applicable to the requested violation hearing in this case. The Court addresses each of these issues in turn.
A. Violation of Conditions of Supervised Release
The Court first addresses whether state law-compliant use of medical marijuana would violate defendant's conditions of supervised release. The conditions of defendant's supervised release prohibit him from committing any other federal, state, or local crime and from purchasing, possessing, using, distributing, or administering any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a *510 physician, during the term of supervision. See Def. Mot. 5-6.
Under the Controlled Substances Act, a federal law, it is unlawful to "manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the [Act]." Gonzales v. Raich , 545 U.S. 1, 13, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005) (citing 21 U.S.C. § 841(a)(1) ). The Act classifies marijuana as a Schedule I drug, based in part on a finding that marijuana has "no currently accepted medical use in treatment in the United States." 21 U.S.C. § 812(b)(1), (c). The Act contains no exception for medical marijuana. See United States v. Oakland Cannabis Buyers' Cooperative , 532 U.S. 483, 491, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001) (concluding that "a medical necessity exception for marijuana is at odds with the terms of the Controlled Substances Act").
Where a state law legalizing some use of marijuana conflicts with a federal law, the Supreme Court has held that "federal law shall prevail." See Gonzales , 545 U.S. at 29, 125 S.Ct. 2195. Under this framework, courts have concluded that a federal supervisee's state law-compliant use of medical marijuana violates the conditions of supervised release prohibiting a defendant from committing any other federal, state, or local crime and from using or possessing controlled substances and remains unlawful. See, e.g. , United States v. Bey , 341 F. Supp. 3d 528, 531 (E.D. Pa. 2018) ("[A] federal supervisee's state-authorized possession and use of medical marijuana violates the terms of federal supervised release."); United States v. Johnson , 228 F. Supp. 3d 57, 62 (D.D.C. 2017) (concluding same). Because the Controlled Substances Act classifies marijuana as a Schedule I drug with no medical use, courts have concluded that it cannot be prescribed by a physician to a supervisee without violating those conditions of supervised release. See United States v. Harvey , 794 F. Supp. 2d 1103, 1106 (S.D. Cal. 2011), aff'd , 659 F.3d 1272 (9th Cir. 2011). Thus, a "district court ha[s] no discretion to allow [a supervisee] to use medical marijuana while on supervised release," as to do otherwise would defy federal law. See United States v. Schostag , 895 F.3d 1025, 1028 (8th Cir. 2018).
Because the use of marijuana is unlawful for any purpose under federal law, neither states nor the Court have authority to permit a defendant to use medical marijuana during his or her supervised release. See United States v. McIntosh , 833 F.3d 1163, 1179 n.5 (9th Cir. 2016) ("[W]hile the [Controlled Substances Act] remains in effect, states cannot actually authorize the manufacture, distribution, or possession of marijuana."). Thus, even state law-compliant use of medical marijuana violates the conditions of supervised release that prohibit defendants from committing any other federal, state, or local crime and from using or possessing controlled substances.
B. Applicability of the Appropriations Rider
The question whether the appropriations rider prohibits DOJ from prosecuting a violation of supervised release is an issue of first impression in this Circuit. Several courts have declined to address such an issue when presented with similar facts. See, e.g. , United States v. Bey , 341 F. Supp. 3d 528, 533 & n.46 (E.D. Pa. 2018) (declining to address Appropriations Act issue but concluding federal supervisee's state-authorized use of medical marijuana violated the conditions of supervised release); United States v. Johnson , 228 F. Supp. 3d 57, 61-62 (D.D.C. 2017) (declining to address Appropriations Act issue but concluding that use of medical marijuana *511 was undoubtedly a violation of federal law).
The appropriations rider provides that "[n]one of the funds" made available to DOJ in the Consolidated Appropriations Act may be used to "prevent" states "from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." See Pub. L. No. 116-6, § 537, 133 Stat. 13, 138 (2019). Defendant maintains that DOJ involvement in prosecuting defendant's violation of his conditions of supervised release would (1) "prevent" Pennsylvania from "implementing" its medical marijuana law in plain violation of the rider and (2) constitute a use of DOJ funding. Def. Mot. 4. The Government disputes these contentions and maintains that the rider is inapplicable to violations of supervised release. Gov't Resp. 2.
a. Preventing Pennsylvania from Implementing the Medical Marijuana Act
The parties disagree about whether DOJ involvement in prosecuting a violation of supervised release premised on a state law-compliant use of marijuana would "prevent[ ]" Pennsylvania from "implementing" its medical marijuana law. See Def. Mot. 4; Gov't Resp. 2.
Defendant argues that under the reasoning of the Ninth Circuit decision in United States v. McIntosh , 833 F.3d 1163 (9th Cir. 2016), the rider applies to prohibit DOJ from prosecuting such a violation of supervised release. Def. Mot. 8, 11-12. In McIntosh , the court was presented with the question whether the rider prohibited DOJ from bringing a criminal prosecution against an individual under the Controlled Substances Act for state law-compliant use of marijuana. See 833 F.3d at 1168. Interpreting the language of the rider, the Ninth Circuit concluded that the plain meaning of "implementing" a law is to give "practical effect" to the law. See id. at 1176. The McIntosh court then reasoned that "a superior authority, which prohibits certain conduct, ... prevent[s] a subordinate authority from implementing a rule that officially permits such conduct by punishing individuals who are engaged in the conduct officially permitted by the lower authority." Id. The Ninth Circuit thus determined that "[b]y officially permitting certain conduct, state law provides for non-prosecution of individuals who engage in such conduct. If the federal government prosecutes such individuals, it has prevented the state from giving practical effect to its law ...." Id. at 1176-77. The Ninth Circuit concluded that "at a minimum , [the rider] prohibits DOJ from spending funds from relevant appropriations acts for the prosecution of individuals who engaged in conduct permitted by the State Medical Marijuana Laws and who fully complied with such laws." See id. at 1177 (emphasis added). Under this reasoning, defendant argues that, like a criminal prosecution of marijuana offenses, prosecuting him for a violation of supervised release for state law-compliant use of medical marijuana would prevent Pennsylvania from "giving practical effect" to its medical marijuana law by "punishing individuals who are engaged in the conduct officially permitted" by Pennsylvania. See Def. Mot. 13.
The Government contends that McIntosh was decided incorrectly, or, in the alternative, that even if McIntosh was correctly decided, it cannot be extended to violations of supervised release. For the reasons that follow, the Court rejects each of these arguments.
First, the Government argues that McIntosh was incorrectly decided and that the rider only prohibits DOJ from taking legal action against the states , such as attempting to enjoin state marijuana laws, but does not prohibit DOJ from engaging *512 in more individualized actions like criminal prosecutions. See Gov't Resp. 13-14. Addressing such an argument, the McIntosh court concluded that "[i]n light of the ordinary meaning of the terms of [the rider] and the relationship between the relevant federal and state laws, ... DOJ, without taking any legal action against the Medical Marijuana States, prevents them from implementing their laws ... by prosecuting individuals for use, distribution, possession, or cultivation of medical marijuana that is authorized by such laws." McIntosh , 833 F.3d at 1177.
The Court concludes that a state is "prevent[ed]" from "implementing" its laws when DOJ "punish[es] individuals who are engaged in the conduct officially permitted" by the state law. See id. at 1176. "It has never been a legal principle tha[t] an otherwise impermissible government intrusion can be countenanced because any one defendant is a small piece of the legal landscape." See United States v. Marin Alliance for Medical Marijuana , 139 F. Supp. 3d 1039, 1044 (N.D. Cal. 2015). To conclude that the language of the rider applies only to actions against the states would "torture[ ] the plain meaning of the statute." See id. The Court thus agrees with the Ninth Circuit's conclusion in McIntosh and rejects the Government's arguments to the contrary.
In the alternative, the Government argues that even if the rider prohibits criminal prosecutions by DOJ, it has no impact on prosecuting violations of conditions of supervised release. Gov't Resp. 17. In support, the Government relies on several cases in which courts have addressed the relationship between the rider and supervised release and concluded that the rider has no impact. Id. at 11; see United States v. Nixon , 839 F.3d 885, 887-88 (9th Cir. 2016) (per curiam) (affirming a district court's denial of defendant's motion to modify supervised release conditions to allow for state law-compliant medical marijuana use, concluding that the rider did not impact the Controlled Substances Act, federal courts, or the U.S. Probation Office); United States v. Tuyakbayev , No. 15-cr-00086, 2017 WL 3434089, at *2-3 (N.D. Cal. Aug. 10, 2017) (concluding the rider did not inhibit DOJ from using funds in a violation of supervised release hearing in California). The Government argues that punishing a violation of supervised release differs significantly from engaging in a criminal prosecution-punishing a violation of supervised release is focused on "holding the defendant accountable for failing to abide by conditions imposed by a federal court," not punishing the use of marijuana under federal law. See Gov't Resp. 17. Thus, the Government maintains that any impact on Pennsylvania's ability to implement its medical marijuana program is of a "far lesser degree." Id. at 18.
The Court concludes that, under the plain language of the rider, the rider applies to violations of supervised release. The rider prohibits the use of any DOJ funding to "prevent" a state from "implementing" its law and does not specify what form this prevention must take. Under this broad language, courts have applied the rider to proceedings other than criminal prosecutions of federal marijuana offenses. See United States v. Pisarski , 274 F. Supp. 3d 1032, 1040 (N.D. Cal. 2017) (applying the rider to prohibit DOJ from using funds in sentencing proceedings of defendants who pled guilty to federal marijuana offenses before the rider was enacted); United States v. Marin Alliance for Medical Marijuana , 139 F. Supp. 3d 1039, 1045, 1047 (N.D. Cal. 2015) (applying the rider to prohibit DOJ from enforcing a preexisting permanent injunction against a medical marijuana dispensary). The rider has also been extended to protect individuals from *513 federal prosecutions that indirectly attempt to punish them for state law-compliant actions. For example, a U.S. District Court for the Eastern District of Michigan concluded that the rider prohibits DOJ from using funds to prosecute an owner of a state law-compliant marijuana dispensary for possession of a firearm in connection with his medical marijuana business. In that case the court stated that "[a]lthough the Government is not attempting to directly prosecute [the defendant] for his medical marijuana business," the prosecution "accomplishes materially the same effect." See United States v. Samp , No. 16-20263, 2017 WL 1164453, at *2 (E.D. Mich. Mar. 29, 2017).
The Court follows those district courts which have concluded that the appropriations rider applies to proceedings other than federal criminal prosecutions of marijuana offenses. Revoking a defendant's supervised release for his state law-compliant medical marijuana use would "accomplish[ ] materially the same effect" as directly prosecuting him for his marijuana use and would prevent Pennsylvania from "giving practical effect" to its law. See Samp , 2017 WL 1164453, at *2.
Furthermore, the cases concluding the rider did not apply to violations of supervised release are distinguishable from this case. For example, in United States v. Nixon , the Ninth Circuit concluded that the district court did not abuse its discretion by refusing to modify the conditions of a defendant's probation to allow him to possess and use medical marijuana, which continues to be unlawful under federal law. See 839 F.3d 885, 887-88 (9th Cir. 2016). In so holding, the court considered only the rider's impact on the authority of a federal court -an entity that is not funded by DOJ and therefore not covered by the rider. See id. at 887. In this case, the question is how the rider impacts the use of funds by DOJ . Further, defendant does not ask the Court to modify the terms of his supervised release but argues only that DOJ cannot use its funds to prosecute any violation premised on his state law-compliant use of medical marijuana. United States v. Tuyakbayev is likewise inapplicable to this case. See No. 15-cr-00086, 2017 WL 3434089 (N.D. Cal. Aug. 10, 2017). That decision was based in part on the determination that DOJ involvement in a violation of supervised release hearing would not "prevent" California from "implementing" its medical marijuana law where that law specifically permits California courts "to prohibit use of medical marijuana as a condition of post-conviction supervision." Id. at *2.
In contrast, Pennsylvania's Medical Marijuana Act contains no provision similar to the California law cited in Tuyakbayev . The Medical Marijuana Act carves out some exceptions, such as prohibiting the use of medical marijuana in prisons, but it contains no exception for individuals on probation or parole or under supervision. See 35 Pa. Stat. Ann. § 10231.1309. Without any such provision, the Court concludes that the Act applies to those individuals just as it applies to any other person. Thus, unlike the circumstances in Tuyakbayev , prohibiting defendant from using medical marijuana as a condition of supervised release would prohibit Pennsylvania from giving "practical effect" to its law.
For the foregoing reasons, the Court concludes that the appropriations rider prohibits DOJ from using its funds to prosecute a violation of supervised release based on state law-compliant use of marijuana. In reaching this conclusion, the Court acknowledges that "some members of Congress may have desired a more expansive construction of the rider, while others may have preferred a more limited *514 interpretation." McIntosh , 833 F.3d at 1178-79. However, in interpreting appropriations law, it is the Court's role to "consider only the text of the rider." Id. (citing Salazar v. Ramah Navajo Chapter , 567 U.S. 182, 200, 132 S.Ct. 2181, 183 L.Ed.2d 186 (2012) ). "If Congress intends to prohibit a wider or narrower range of DOJ's actions, it certainly may express such intention, hopefully with greater clarity, in the text of any future rider." Id.
The Court next turns to the question whether DOJ involvement in such a violation hearing would constitute a use of its funds.
b. Use of DOJ Funds
Defendant argues that DOJ involvement in a violation of supervised release hearing constitutes a use of its funds. Specifically, defendant points out that an attorney from the U.S. Attorney's Office, whose salary is paid by DOJ funding, is required to be present at the hearing to prosecute the violation. See Def. Mot. 18. Defendant further contends that U.S. Attorney would use more funds to file documents with the Court, to print relevant documents, and to hire potential expert witnesses. Def. Reply 10. In addition, defendant maintains that DOJ also funds the U.S. Marshals and the Bureau of Prisons, both of which would be involved in the hearing. Def. Mot. 19.
The Government argues that DOJ involvement would not constitute a use of its "funds" given that DOJ prosecutors and U.S. Marshals are paid a fixed salary which they would be paid regardless of whether they attended the hearing. Gov't Resp. 19 & n.12. The Government further maintains that the DOJ role is minimal-it is only to "advance the critical federal interest of ensuring that persons convicted under federal laws, and subject to terms of federal supervised release, comply with the terms of their release," which are imposed by the Court. Id. at 16. Unlike prosecuting a federal marijuana offense, prosecuting a violation of supervised release does not require DOJ to expend significant funds on, for example, investigation. See id. at 16, 19-20. The Government puts a particular focus on the fact that the violation petition is brought by the U.S. Probation Office-an arm of the Court-not DOJ. See id. at 11-12. The Government further argues that the need for the Bureau of Prisons to use funds in this case is "speculative." Id. at 19 n.12.
The Court concludes that DOJ involvement in a violation of supervised release hearing-through the presence of an Assistant U.S. Attorney, the U.S. Marshals, or the Bureau of Prisons-constitutes a use of DOJ funding. Regardless of the fact that the U.S. Probation Office, an arm of the judiciary, brings the violation petition, the U.S. Attorney's Office prosecutes the violation. That U.S. Attorneys and U.S. Marshals are paid a fixed salary is immaterial; the fact that these employees would be devoting time to this case over another case is sufficient to constitute use of funds. Moreover, however minor the expense, the rider provides that "[n]one of the funds" appropriated to DOJ may be used to prevent a state from implementing its medical marijuana laws. Thus, DOJ participation in such proceedings would constitute a use of its funds under the rider.
C. Scheduling Further Proceedings
Defendant's motion seeks to enjoin the use of DOJ funds in these proceedings and to dismiss the violation petition. Def. Mot. 4. Having concluded that the rider is applicable in violation of supervised release hearings, the Court must now consider how this case should proceed.
For the rider to apply to the defendant in this case, defendant must *515 show that his use of medical marijuana was compliant with state law-in this case, the Medical Marijuana Act. To assist the Court in making this determination, a defendant is "entitled to [an] evidentiary hearing[ ] to determine whether [his or her] conduct was completely authorized by state law." See McIntosh , 833 F.3d at 1179. Such an evidentiary hearing should precede any hearing on the violation of supervised release. At the evidentiary hearing, defendant bears the burden of showing, by a preponderance of the evidence, that he "strictly complied with all relevant conditions imposed by" the Medical Marijuana Act. See id. These requirements include, inter alia , that defendant has one of the seventeen enumerated serious medical conditions that qualify an individual for medical marijuana use, that he is "in possession of a valid identification card issued by" the Pennsylvania Department of Health, and that the medical marijuana was dispensed in an appropriate form. See 35 Pa. Stat. Ann. §§ 10231.103, 10231.303. The Court further concludes that because the purpose of the evidentiary hearing is to determine whether the rider applies, the rider does not bar DOJ from participating in the evidentiary hearing.
The parties' arguments that such a hearing is unnecessary in this case are unavailing. Defendant argues that his compliance with state law is established, given that the petition states that he is in possession of a medical marijuana identification card. See Def. Mot. 17-18. But this is not the only requirement imposed by the Medical Marijuana Act and, as such, it is insufficient, standing alone, to establish defendant's compliance.
The Government argues that the record already reflects defendant's non-compliance with state law, given that two of his charged positive drug tests predate the issuance of his medical marijuana identification card. Gov't Resp. 21 n.13. The Court concludes that the rider does not apply to these two drug tests. However, the Court disagrees that this eliminates the need for a hearing on defendant's eight remaining, potentially state law compliant uses of medical marijuana. Cf. United States v. Kleinman , 880 F.3d 1020, 1028 (9th Cir. 2017) ("The prosecution cannot use a prosecutable charge (for conduct that violates state medical marijuana law) to bootstrap other charges that rely solely upon conduct that would fully comply with state law.").
With respect to defendant's eight alleged positive drug tests after the issuance of his medical marijuana identification card, the Court must determine whether defendant was compliant with state law. If so, the rider applies and prohibits the use of DOJ funds in prosecuting the violations of supervised release based on those eight drug tests. If the Court concludes that defendant's use of medical marijuana was not compliant with state law, the rider is inapplicable, and DOJ may use its funds in prosecuting the charged violations of supervised release without limitation. This Memorandum does not affect the two alleged positive marijuana drug tests obtained before defendant received a medical marijuana identification card.
V. CONCLUSION
The Court concludes state law-compliant use of medical marijuana violates the conditions of defendant's supervised release. Additionally, the rider contained in the Consolidated Appropriations Act prohibits DOJ from using its funds to prosecute violations of supervised release premised on a defendant's state law-compliant use of medical marijuana. An evidentiary hearing for the purpose of determining whether defendant was fully compliant with state law governing use of medical marijuana, *516 and thus whether the rider enjoins the use of DOJ funds in a violation of supervised release hearing in this case, is scheduled for June 13, 2019. An appropriate Order follows.