# [J-42-2020]
## IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

## SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.

| | | |
|---|---|---|
| MELISSA GASS, ASHLEY BENNETT, AND ANDREW KOCH, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | : : : : | No. 118 MM 2019 |
| | : | Appeal from the Extraordinary Jurisdiction granted for this case which concerns a challenge to a policy (the Policy) prohibiting the use of medical marijuana by individuals under the supervision of the Lebanon County Probation Services |
| Petitioners | : : : : : : | |
| v. | : : : | |
| | : | ARGUED: May 19, 2020 |
| 52nd JUDICIAL DISTRICT, LEBANON COUNTY, | : : : : | |
| Respondent | : : | |

## *OPINION*

**CHIEF JUSTICE SAYLOR**                    **DECIDED: June 18, 2020**

This matter concerns a challenge to a local judicial district's policy prohibiting the use of medical marijuana by individuals under court supervision, such as probationers.

In 2016, the Pennsylvania General Assembly enacted the Medical Marijuana Act.[1] In a declaration of policy, it recognized that "[s]cientific evidence suggests that medical marijuana is one potential therapy that may mitigate suffering in some patients and also enhance quality of life." 35 P.S. §10231.102(1). The Legislature then

---

[1] Act of April 17, 2016, P.L. 84, No. 16 (codified at 35 P.S. §§10231.101-10231.2110) (the "MMA" or the "Act").

announced its intention to provide a temporary program of access balancing patient needs with safety considerations. *See id.* §10231.102(3)(i), (4).

Under the Act, "[n]othwithstanding any provision of law to the contrary, use or possession of medical marijuana as set forth in [the] act is lawful within this Commonwealth." *Id.* §10231.303(a). Relevantly, medical marijuana may only be dispensed, however, to patients who receive certifications from qualified physicians and possess a valid identification card issued by the Pennsylvania Department of Health. *See id.* §10231.303(b)(1)(i).[2] A "patient" is a Pennsylvania resident who has an enumerated serious medical condition and has met specified requirements for certification. *Id.* §10231.103. Notably, there are many other regulatory requirements and restrictions imposed throughout the Act. *See* Class Action Petition for Review Addressed to the Court's Original Jurisdiction, 118 MM 2019 (Pa.), at ¶¶37-63 (summarizing the MMA's regulatory prescriptions).

And of particular relevance here, the MMA contains an immunity provision protecting patients from government sanctions. *See* 35 P.S. §10231.2103(a). Per the statute, no such individual "shall be subject to arrest, prosecution or penalty in any manner, or denied any right or privilege, . . . solely for lawful use of medical marijuana . . . or for any other action taken in accordance with this act." *Id.*

In September 2019, the 52nd Judicial District -- comprised of the Lebanon County Court of Common Pleas (the "District") -- announced a "Medical Marijuana Policy" under the issuing authority of the president judge. *See* Lebanon County Probation Services Policy Nos. 5.1-2019 & 7.4-2019 (Sept. 1, 2019) (the "Policy"). Centrally, the Policy prohibits "the active use of medical marijuana, regardless of

---

[2] Parenthetically, the statute also allows for dispensation to qualified caregivers. *See id.* §10231.303(b)(1)(ii).

whether the defendant has a medical marijuana card, while the defendant is under supervision by the Lebanon County Probation Services Department." *Id.* at 2. The following explanation was provided:

> The medical marijuana card [issued under the MMA] is *not a prescription* for medication, but rather a recommendation by a physician as to a form of treatment. Medical marijuana has not been approved as a MAT (medically assisted treatment) by the FDA (Food and Drug Administration). The use of medical marijuana may have benefits for some medical conditions and under certain circumstances may be helpful. Individuals, however, who are involved in substance abuse and issues surrounding addiction which may have played a part in the defendant's criminal violations of law, must be dealt with in a humane but effective manner so the defendant can be rehabilitated . . . .
>
> Under the Federal Controlled Substances Act (CSA) of 1970, marijuana is classified as a Schedule I substance. By definition under the law, Schedule I drugs have a high potential for abuse and dependency, with no recognized medical use or value. Any marijuana possession, cultivation, or use is a federal crime, subjecting a defendant to fines, prison time, or both. Since marijuana use (medical or recreational) is deemed illegal under Federal law, [and] the Court and the Probation Department should not knowingly allow violations of law to occur, the prohibition against such use is required.

*Id.* at 1 (emphasis in original).[3] As originally stated, the Policy contained no exceptions.

Petitioners are individuals under the supervision of the probation agency in Lebanon County. Represented by the American Civil Liberties Union, they filed a petition in the Commonwealth Court's original jurisdiction challenging the validity of the Policy, particularly in light of the MMA's facial applicability to persons under court

---

[3] The federal Controlled Substances Act of 170, Pub. L. No. 91-513, 84 Stat. 1242, is codified, as amended, at Sections 801 through 971 of Title 21 the United States Code. *See* 21 U.S.C. §§801-971.

supervision, as well as on account of the enactment's immunity provision. Petitioners included class-action allegations and sought declaratory and injunctive relief confirming that the Act prohibits the District from penalizing medical marijuana patients who comply with state law -- including those under court supervision -- and restraining enforcement or implementation of the Policy.

Petitioners alleged that each suffers from serious and debilitating medical conditions. After unsuccessful treatments with other therapies, Petitioners averred, they secured lawful authorization, per the MMA, to use medical marijuana. Further, the petition asserted that:

> [m]ore than sixty people with serious medical issues in Lebanon County must now decide whether to discontinue their lawful use of a medical treatment that safely and effectively alleviates their serious medical conditions, or risk revocation of their probation and possible incarceration. It is a choice between risking severe health consequences and going to jail.

Class Action Petition, 118 MM 2019 (Pa.), at ¶2. Petitioners also stressed the lack of any exceptions.

Separately, Petitioners filed an application for special relief in the nature of a preliminary injunction. Soon thereafter, the Commonwealth Court proceeded, *sua sponte*, to transfer the case to this Court, concluding that it lacked jurisdiction to grant the requested relief. The District then filed its response in this Court opposing preliminary injunctive relief. It claimed, among other things, that Petitioners were unlikely to prevail on the merits, arguing, *inter alia*, that the General Assembly didn't intend the MMA to override the courts' ability to supervise probationers and parolees.

Moreover, the District asserted that its probation services office had experienced disruptions and persistent difficulties when supervising probationers and parolees using medical marijuana. In this vein, the District elaborated as follows:

> For instance, some individuals under court supervision with medical marijuana prescriptions are unable to identify the health condition that led to the medical marijuana prescription. The Office also found a significant amount of individuals under supervision, who possess a medical marijuana card, that have a history of marijuana abuse and/or their underlying charges are related to the unlawful possession of marijuana. Additionally, drug testing for illicit use of marijuana is also rendered meaningless if an individual has a prescription for the legal use of medical marijuana as the laboratory is unable to discern between legal and illegal strands of marijuana.

Answer to Petitioners' Application for Special Relief in the Nature of a Preliminary Injunction, 118 MM 2019 (Pa.), at 2 (internal citations omitted). The District also maintained that it would be harmed if the Policy were to be restrained, particularly since some drug treatment programs refuse to accept individuals who are using medical marijuana.

Additionally, the District suggested that an October 7, 2019 revision to the Policy dissipates any concern of harm to the affected individuals, since per the amendment individuals aggrieved by the Policy may benefit from an exemption in the event they prove, at a hearing, the "medical necessity" for their ongoing use of medical marijuana.[4] *See, e.g.*, Answer to Petitioners' Application for Special Relief in the Nature of a Preliminary Injunction, 118 MM 2019 (Pa.), at 6-7 (positing that the Policy "carefully

---

[4] The revised version of the Policy provides that:

> Any person on supervision who believes they are aggrieved by this policy may petition the Court for a full and fair hearing to determine whether they should be excused from its application to them. At that hearing, the Petitioner will bear the burden of establishing to the Court the medical necessity of their ongoing use of medical marijuana.

Brief for Respondent at 17 (quoting Lebanon County Probation Services Policy Nos. 5.1-2019 & 7.4-2019 (rev. Oct. 7, 2019)).

balances the need to rehabilitate offenders against the need for medical marijuana and gives individual consideration for the Petitioners' specific circumstances."). According to the District, this hearing would "[o]perationally" be part of a parole or probation revocation proceeding. *Id.* at 4.

The District further noted that the use of medical marijuana conflicts with the general conditions of probation and parole in Lebanon County, which require compliance with all state *and federal* criminal laws and prohibit the possession and use of alcohol and "any legal or illegal mind/mood altering chemical/substance." *Id.* at 3. The District attested that it has been the general experience that requiring adherence to such general conditions assists with rehabilitation and reduces the risk of recidivism.

Ultimately, although the transfer by the Commonwealth Court was improvident, this Court elected to exercise its extraordinary King's Bench jurisdiction to consider the petition. We found that the case implicates substantial legal questions concerning matters of public importance, particularly in light of the allegation that other judicial districts have adopted, or are considering adopting, similar limitations on the use of medical marijuana. The Order also stayed any enforcement or implementation of the Policy pending further order and directed the Prothonotary to establish a briefing schedule and list the case for oral argument. *See* Order, 118 MM 2019 (Pa. Oct. 30, 2019).

While there are many underlying factual matters alluded to in the petition for review, we view the central question -- namely, whether the Policy offends the MMA -- as a legal one that may be decided without the need for fact-finding.

As a threshold matter, the parties dispute the appropriate framing of the question presented. Petitioners, for their part, advance the issue of whether the Policy violates the immunity provision of the MMA. The District, on the other hand, restates the

question presented as follows: "May a judicial district inquire into the nature of medical marijuana use by a probationer?" Brief for Respondent at 5. Along these lines, the District pervasively asserts that Petitioners seek "absolute immunity" and an "all-encompassing right to medical marijuana that cannot be questioned." *Id.* at 11, 22; *see also id.* at 6 (claiming that Petitioners ask this Court to "declare that simply having a medical marijuana card shuts down any judicial inquiry" and "excuses [Petitioners] from judicial oversight"); *accord id.* at 7, 10-11, 15-16, 18, 25-26, 35, 39-40, 42-43, 46.

To the extent that we would consider the issue on the terms stated by the District, there would simply be no dispute, since Petitioners freely acknowledge that they must comply with the MMA or risk sanctions. *See, e.g.*, Class Action Petition, 118 MM 2019 (Pa.), at ¶¶37-63. And they agree that the District, through its judges and probation officers, may make reasonable inquiries to ensure their use of medical marijuana is lawful. *See, e.g.*, Reply Brief for Petitioners at 1, 3. We will therefore consider the issue presented entirely on the terms framed by Petitioners.

Petitioners stress that the General Assembly made a policy decision, in the MMA, to legalize the use of medical marijuana in the Commonwealth with the aim of providing an effective treatment for patients with serious medical conditions. *See, e.g.*, Brief for Petitioners at 22 ("Allowing courts to create additional hoops that patients must jump through to avail themselves of the benefits of the MMA would usurp the will of the legislature and open the door to additional judicially created prerequisites to patients' eligibility under the Act."). Drawing support from decisions of the highest courts of other states, they also find the conflict between the Policy and the Act's explicit immunity provision to be manifest and disabling, relative to the Policy's viability. *See, e.g.*, *Reed-Kaliher v. Hoggatt*, 347 P.3d 136, 139 (Ariz. 2015) (invalidating a probation condition restricting the use of medical marijuana); *State v. Nelson*, 195 P.3d 826, 833 (Mont.

2008) (holding that the state's medical marijuana law "simply does not give sentencing judges the authority to limit the privilege of medical use of marijuana while under state supervision").

With reference to the federal Controlled Substances Act, Petitioners assert that federal law has no bearing on the Policy's validity, since the District has no legal basis to require that medical marijuana patients comply with federal prohibitions where the Pennsylvania General Assembly has specifically displaced the prior state-law analogue. According to Petitioners, reliance on federal law to supersede the MMA would undermine Pennsylvania's sovereignty. *See* Brief for Petitioners at 10-11 ("The Commonwealth has sovereign authority to allow its residents to use marijuana to treat certain serious medical conditions without fear of arrest, prosecution, or the denial of any right or benefit *by the state.*" (emphasis in original); *id.* at 11 ("That medical marijuana remains illegal under federal law neither compels nor authorizes the courts of this Commonwealth to ignore the will of the state legislature in favor of enforcing federal law.").[5]

The District, on the other hand, maintains that the Policy is grounded in salutary rehabilitative aims, as it meshes with its general conditions of probation, which both prohibit probationers from using alcohol, narcotics, and legal and illegal mind- and/or mood-altering chemical substances and require adherence to state and federal law. The District also reiterates its assertion that use of medical marijuana by probationers has fostered management difficulties in the administration of probation and substantially limits avenues for drug treatment. Centrally, the District maintains that, in enacting the

---

[5] Petitioners' position is supported by *amici*, Society of Cannabis Clinicians, Association of Cannabis Specialists, Drug Policy Alliance, and Americans for Safe Access Foundation, which credit Petitioners' legal arguments and offer additional policy support.

MMA, the General Assembly did not intend to limit the courts' traditional ability to supervise probationers.

With regard to the decisions from other jurisdictions, the District envisions many distinguishing factors. Chiefly, the District emphasizes that Pennsylvania is the only state, among those referenced, in which the immunity provision of a medical marijuana statute restrains punishment or denial of privileges "solely for" use of medical marijuana. 35 P.S. §10231.2103(a). Because Petitioners are not just alleged "patients" but also probationers under court supervision, it is the District's position that they are not being subject to restrictions on their use of medical marijuana *solely* because they are patients. *Accord* Brief for Respondent at 15 ("Section 2103(a)'s failure to contemplate every particular situation in the life of a 'patient' that might cause friction with the MMA does not support a blanket prohibition against judicial scrutiny of medical marijuana.").

The District further observes that Section 2103(a) shields medical marijuana users from "arrest" and "prosecution," positing that these terms demonstrate an intention to address events occurring *prior to* adjudication and sentencing by the judiciary. Under the principle of statutory construction known as *ejusdem generis*, the District posits, the ensuing catchall phrase -- "or penalty in any manner" -- must be interpreted consistent with the preceding words "arrest" and "prosecution." *See* 1 Pa.C.S. §1903(b).

In Pennsylvania, the District explains, sentencing courts and the Board of Probation and Parole always have enjoyed broad authority to ensure that probation serves effectively to rehabilitate offenders and protect the public. According to the District, the Policy strikes a reasonable balance between these objectives and Petitioners' asserted right of access to medical marijuana. *See* Brief for Respondent at 27 ("The Judicial District's Medical Marijuana Policy is entirely consistent with the

legitimate aims of probation and does not unnecessarily restrict any fundamental right of Petitioners."). Ultimately, the District asks this Court to lift the stay restraining implementation of the Policy and permit Petitioners to secure a hearing and create a "developed record that fully accounts for Petitioners' individual situations and their need for rehabilitation." *Id.* at 8-9.

In assessing whether the Policy conflicts with the immunity provision of the MMA, we view the issue as one of statutory construction. We will therefore apply conventional interpretive principles, as discussed throughout this Court's decisions. *See, e.g.*, *Norfolk S. Ry. Co. v. PUC*, 621 Pa. 312, 328, 77 A.3d 619, 629 (2013). The essential review encompasses close adherence to terms of a statute that are plain and resort to other approaches of discernment only in the presence of ambiguity or inexplicitness. *See id.* Where ambiguity or inexplicitness exists, the Court may afford weight to other considerations, including the object to be attained by the statute under consideration, the consequences of a particular interpretation, and contextual considerations. *See id.*; *see also Schock v. City of Lebanon*, ___ Pa. ___, ___, 210 A.3d 945, 955-59 (2019) (highlighting the role of contextual considerations in the construction of ambiguous statutes). *See generally* 1 Pa.C.S. §§ 1921-1939.

There is no disagreement that Petitioners are eligible to be "patients" under the MMA, who are entitled to the immunity from penalty and cannot be denied of any right or privilege solely for lawful use of medical marijuana. *See* 35 P.S. §10231.2103(a). Responding to the District's argument, however, that Petitioners do not qualify for immunity since the Policy turns on an additional factor -- namely, Petitioners' status as probationers -- we find that this circumstance implicates a material ambiguity.

On the one hand, the District argues, colorably, that the integral involvement of court supervision means that any punishment or denial of the privilege of probation

occurring under the Policy is not "solely for" a petitioner's medical marijuana use. *Id.* Conversely, as Petitioners contend, given that probation is the privilege in issue, revocation on account of otherwise lawful medical marijuana use can be viewed as punishment, or the denial of the privilege of probation, solely on account of such use.

Significantly, in various respects and measures, the MMA accords specific treatment to criminal offenders. For example, under Section 614 of the Act, individuals who have been convicted of drug offenses cannot be affiliated with a medical marijuana dispensary or grower/processor. *See* 35 P.S. §10231.614. Similarly, those convicted of certain drug offenses within a prescribed window of time are ineligible to serve as "caregivers" (*i.e.*, those designated by patients to deliver medical marijuana). *See id.* §10231.502(b). Furthermore, in Section 1309, the General Assembly prohibited the use of medical marijuana in any correctional institution, including one "which houses inmates serving a portion of their sentences on parole or other community correction program." *Id.* §10231.1309(2).

Notably, individuals in each of these categories, who are subject to the above constraints, can nonetheless qualify as "patients" who are otherwise eligible to use medical marijuana outside the restricted parameters. *Accord Reed-Kaliher*, 347 P.3d at 139 (observing that the state medical marijuana law "does not deny even those convicted of violent crimes or drug offenses (so long as they are not incarcerated) access to medical marijuana if it could alleviate severe or chronic pain or debilitating medical conditions"). And, to the degree that they satisfy the Act's threshold requirements and obtain medical marijuana cards, each is entitled to the immunity afforded under Section 2103(a). *Accord id.*; *see also U.S. v. Jackson*, 388 F. Supp. 3d 505, 513 (E.D. Pa. 2019) ("The Medical Marijuana Act carves out some exceptions, such as prohibiting the use of medical marijuana in prisons, but it contains no exception

for individuals on probation or parole or under supervision.  Without any such provision, the Court concludes that the Act applies to those individuals just as it applies to any other person." (citation omitted)).

Section 1309(a) is particularly significant, in our judgment, since the Legislature considered persons under court supervision and chose to impose constraints only upon a specific subcategory (those physically present in a correctional institution).  *See* 35 P.S. §10231.1309(2).  As Petitioners persuasively assert, had the General Assembly intended broader limitations, it would have been a straightforward matter for it to have said this.[6]

We also respectfully differ with the District's position that it may rely on its general conditions of probation to make discretionary determinations about probationers' use of medical marijuana, beyond making inquires to determine whether the usage is lawful under the MMA.  Although the District highlights that the general conditions' restrictions on alcohol and mind- and/or mood-altering drugs go hand in hand, the Legislature has not implemented a remedial scheme authorizing the use of alcohol for treatment of serious medical conditions.  *Accord Nelson*, 195 P.3d at 832 ("When a qualifying patient uses medical marijuana in accordance with the MMA, he is

---

[6] The District's reliance on the *ejusdem generis* principle to suggest that immunity should apply only to pre-adjudicative measures has lesser force, in our view, in light of the overarching policies underlying the Act.  The General Assembly likely chose the terms "arrest" and "prosecution" precisely because these are types of actions that lead to punishment or the denial of privilege.  Viewed as such, a probation revocation hearing is of the same character.

In this respect, and more broadly, we also credit an argument by Petitioners that the Act is remedial in nature, and thus, should be accorded a liberal construction.  S*ee* 1 Pa.C.S. §1928(c).

receiving lawful medical treatment. In this context, medical marijuana is most properly viewed as a prescription drug." (citation omitted)).

As to the general conditions' prohibition against violations of federal law, while possession and use of marijuana remains illegal under federal law even for medical purposes, Petitioners correctly observe that the federal Controlled Substances Act does not (and could not) require states to enforce it. *See* Brief for Petitioners at 34 (citing *Printz v. U.S.*, 521 U.S. 898, 935, 117 S. Ct. 2365, 2384 (1997) ("Congress cannot compel the States to enact or enforce a federal regulatory program.")); *see also Ter Beek v. City of Wyoming*, 846 N.W.2d 531, 538 (Mich. 2014) (applying the *Printz* rationale to conclude that a state can both comply with the federal Controlled Substances Act and authorize the use of medical marijuana law as a matter of state law). Moreover, through a continuing series of appropriations enactments since 2014, Congress has prohibited the United States Department of Justice from utilizing allocated funds to prevent states from "implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." *Jackson*, 388 F. Supp. 3d at 509 (quoting Consolidated Appropriations Act, 2019, Pub. L. No. 116-6, 133 Stat. 13 §537 (2019)).

Congress's approach evinces a respect for the core principle of federalism recognizing dual sovereignty between the tiers of government. *See United States v. Davis*, 906 F.2d 829, 832 (2d Cir. 1990) ("The states and the national government are distinct political communities, drawing their separate sovereign power from different sources, each from the organic law that established it. Each has the power, inherent in any sovereign, independently to determine what shall be an offense against its authority and to punish such offenses."). In enacting the MMA, the Pennsylvania Legislature proceeded pursuant to its independent power to define state criminal law and promote

the health and welfare of the citizenry.  *See Whalen v. Roe,* 429 U.S. 589, 603 n.30, 97 S. Ct. 869, 878 n.30 (1977) (citing, *inter alia*, *Robinson v. California,* 370 U.S. 660, 664-65, 82 S. Ct. 1417, 1419-20 (1962)).  While the circumstances are certainly uneasy -- since possession and use of medical marijuana remains a federal crime -- we find that the District cannot require state-level adherence to the federal prohibition, where the General Assembly has specifically undertaken to legalize the use of medical marijuana for enumerated therapeutic purposes.

We are cognizant of the District's concerns that medical marijuana use by probationers may, in fact, cause difficulties with court supervision and treatment.  As we have observed previously: "The concern that unintended consequences may unfold are prevalent relative to the promulgation of experimental, remedial legislation[.]"  *Williams v. City of Phila.*, 647 Pa. 126, 150, 188 A.3d 421, 436 (2018).  Nevertheless, "[w]here the language of the governing statute is clear (or clear enough), . . . the solution is legislative -- and not judicial -- adjustment."  *Id.* at 150-51, 188 A.3d at 436.

Along these lines, the Supreme Court of Montana has aptly observed that, "whether or not medical marijuana is ultimately a good idea is not the issue" before the courts.  *Nelson*, 195 P.3d at 833.  Rather, in Pennsylvania, as elsewhere, the political branch has decided to permit patients -- including probationers -- to use medical marijuana for specified, serious medical conditions, upon a physician's certification. The Policy, both in its original and amended forms, fails to afford sufficient recognition to the status of a probationer holding a valid medical marijuana card as a patient, entitled to immunity from punishment, or the denial of any privilege, solely for lawful use.  *See* 35 P.S. §10231.2103(a).

As discussed in connection with our clarification of the question presented, this case does not merely concern an effort on the part of the District (or its judges or

probation officials) to reasonably inquire into the lawfulness of a probationer's use of medical marijuana. Rather, both the original and amended Policies are constructed upon a presumption that any and all use is impermissible. In terms of the amended Policy, the Court deems the affordance of a hearing -- in which probationers bear the burden of overcoming this presumption by proving medical necessity and lawfulness of use -- to be an insufficient countermeasure to the Policy's foundationally inappropriate presumption.

Certainly, judges and probation officials may make reasonable inquiries into the lawfulness of a probationer's use of medical marijuana. In this regard, the District's repeated assertions that it is rendered powerless to do so in absence of the Policy, *see, e.g.*, Brief for Respondent at 6, are not well taken. For example, the Act itself establishes a system whereby the validity of a medical marijuana card can be verified through the Department of Health. *See* 35 P.S. §10231.301(a)(4)(ii) (requiring the Department of Health to maintain a statewide database enabling it to establish the authenticity of identification cards).

Consistent with our interpretation of the MMA, however, judges and/or probation officers should have some substantial reason to believe that a particular use is unlawful under the Act before haling a probationer into court. Although ensuring strict adherence to the MMA by those possessing a valid medical marijuana card may be difficult, the alternative selected by the District of diluting the immunity afforded to probationer-patients by the Act is simply not a viable option.

The petition for declaratory and injunctive relief is GRANTED. For the reasons stated above, the Policy as stated in its original and amended forms is deemed to be

contrary to the immunity accorded by Pennsylvania's Medical Marijuana Act, and as such, the Policy shall not be enforced.

Nothing in this Opinion restrains judges and probation officials supervising probationers and others from making reasonable inquiries into whether the use of marijuana by a person under court supervision is lawful under the Act. And nothing impedes a revocation hearing or other lawful form of redress, where there is reasonable cause to believe that a probationer or other person under court supervision has possessed or used marijuana in a manner that has not been made lawful by the enactment.

The request for class-action treatment is dismissed as moot.

Justices Baer, Todd, Donohue, Dougherty, Wecht and Mundy join the opinion.